IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| Larry D. Epps,<br><br>       Plaintiff,<br><br>  vs.<br><br>ATTORNEY GENERAL,et al..,<br><br>      Defendant | Civil Action No. 07-1188[RMC]<br><br>PLAINTIFF'S MOTION FOR SUMMARY<br>JUDGMENT AND OPPOSITION TO<br>DEFENDANT'S MOTION TO DISMISS THE<br>COMPLAINT OR IN THE ALTERNATIVE FOR<br>SUMMARY JUDGMENT |

Plaintiff Epps moves this Honorable Court under Fed.R.Civ.P.56[a], for summary judgment. Plaintiff brings this pro-se' action seeking damages for Constitutional rights violations arising from an arrest resulting form a warrant issued by the United States Parole Commission per-request of [CSO] Parole Officer, Emesha James.

In support of this motion Plaintiff respectfully refers the Court to the accompanying memorandum of points and authority and attachments thereto, and to the entire record in this case. A proposed Order consistent with relief sought is attached.

January 11th, 2008

Respectfully Submitted,

_Larry D. Epps_
Larry D. Epps
DCDC 188-413
1901 D. Street, S.E.
Washington, D.C. 20003

**RECEIVED**

JAN 1 5 2008

NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

MOTION FOR SERVICE OF PROCESS - 1

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| Larry D. Epps,<br><br>      Plaintiff,<br><br>  V.<br><br>ATTORNEY GENERAL, et al.,<br><br>      Defendant | Civil Action No. 07-1188[RMC]<br><br>PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND OPPOSITION TO DEFENDANT'S MOTION TO DISMISS THE COMPLAINT OR IN THE ALTERNATIVE FOR SUMMARY JUDGMENT |

Plaintiff respectfully Moves this court under Fed.R.Civ.P.56(a) for summary judgment in favor of the Plaintiff, against the United States Attorney General.et al., Named agents/employees, who are subordinates, that acted under color of law.

Plaintiff submits the enclosed evidence that the federal Defendants have failed to bring to the attention of this Court that supports Plaintiff's Complaint; see: disclosure of Ex. (A), Smart Drug Status Report, pg.#1 of 3: Whereas, pg. 3 (Marajuna Metabolite) (THC-COOH) confirm By GCMS "results consistent with Medications Provided." Also see: pg. 2 of same "offender provided Rx Roxicet 5/325 and Doxazoxin Mes, both dated 4/3/06 and Endocet 5/325 mg. Filled 4/13/06 and Marinol 5 mg." Dates:from10/12/07.
Also see: " Natural Cocoa Tea Delisse, 100% Natural Product, Conserves all healing properties of Cocoa leaf, manufactured with Finely chopped leaves." Ex. (a)(1) amd Ex. (a)(2) Oxy Contin.

The Federal Defendants have with erroneous intent, mis - represented key elements in Plaintiff's complaint. The defendant's have

Plaintiff's time of arrest with their account of the facts; 9/8/06.
"Not true!"

Plaintiff's arrest took place in the CSO office of Emesha James, on
September 7th, 2006, at 2:15 P.M., by the D.C. Police dept. of the
seventh District. Plaintiff's liberty was lost in the office of Emesha
James, who had full knowledge of Plaintiff's arrest. Mrs. James, CSO –
Officer, had a duty to contact the Parole Commission and inform the
Commission that she had executed the warrant in her office on 9/7/06.
The law is clear, the D.C. Police who has the authority to make an
arrest in the District of Columbia, Executed the parole warrant on
9/7/06.

The warrant in this Matter was executed when Plaintiff was placed
under arrest… Not the following day when the U.S. Marshall's processed
the paper work, on 9/8/06. The Federal Defendant's violated the law
under 28 C.F.R.§ 2.101 (2)1 Due process.


## **ARGUMENT**


Parole Revocation: Minimal due process protection apply to parole
revocation proceedings for Federal and State Prisoners. Although
parolees are subject to many restrictions, they enjoy a protected
liberty interest in conditional freedom. That interest in continued
liberty is significant enough to fall within the scope of fourteenth
Amendment protection. More over, Parolee's rely on an implicit promise
that their parole will be revoked only through a procedure designed to
ensure that the finding of a violation is factually correctly and that
the discretionary decision to recommit the parolee to prison is based

on an accurate assessment of the parolee's behavior. See: <u>Morrissey v.</u>
<u>Brewer 408 U.S. 471, 482 (1972)</u>.

Due process requirements apply to each of the two stages in a typical
parole revocation proceeding. First, shortly after a parolee is
arrested for a parole violation, a preliminary hearing must be held to
determine whether probable cause exists to believe that a parolee has
violated parole conditions.

The parolee is entitled to appear and present evidence at this
preliminary hearing. And to confront and cross-examine adverse
witnesses unless the hearing officer determines that the witness may
be harmed if his or her identity were disclosed. If the hearing
officer determines that probable cause exists to hold the parolee
pending a final revocation decision the officer must summarize the
proceedings and state the reasons and evidence supporting t he
probable cause finding. If the parolee has been convicted of a crime
while on parole, however, no preliminary hearing is required because
the conviction itself establishes probable cause to believe that there
has been a parole violation.

In the second stage, once probable cause has been established and if
the parolee desires, the parole authority must hold a revocation
hearing within a reasonable time after the parolee has been taken into
custody. The revocation authority must give the parolee notice of the
alleged parole violation before the actual hearing. The decision to
revoke parole should be based upon a retrospective factual inquiry
into whether the parolee should be recommitted to prison or made
subject to additional parole conditions aimed at protecting society
and improving his or her chances of rehabilitation. At the hearing,
evidence against the parolee must be disclosed and the parolee must

also be allowed to cross - examine witnesses unless the hearing
officer specifically finds good cause for preventing such
confrontations.

The parolee must be also allowed to present witnesses and
documentation into evidence. Furthermore, the parolee may show either
that the violation did not take place or did not occur or mitigating
circumstance should preclude revocation.

A "neutral and detached" body, such as the parole board, must make the
revocation decision and issue a written statement of evidence and the
reasons supporting revocation of parole.

Due process does not require appointment of counsel for indigent
parolee's in revocation hearings. *Scotto v. Almenas, 143 f.3d 105, 111*
*(2d. cir. 1998),*(Parole Officer not absolutely immune for officer's
alleged acts of falsely preparing parole violation report and
recommending that warrant be issued for parolee's arrest, although
officer signing parole warrant entitled to absolute immunity); see:
*Dawson v. Newman, 419 F.3d 656,662 [7th Cir.2005]* (Parole board member
not absolutely immune for allegations of failing to investigate
Plaintiff's entitlement to release in ordinary course of everyday
duties); *Swift v. Cal.,384 F.3d 1184, 1191 [9th Cir.2004]* (Parole
officer not absolutely immune for investigation of alleged Parole
violations).

The Federal DEFENDANTS' see: pg. 12, line 19, of Defendants Motion For
Summary Judgment, where the defendants state, "Plaintiff almost
gratuitously engaged in conduct that could support a revocation of his
parole."

The Federal DEFENDATS' BY AND THROUGH COUNSEL CLAIM THAT Plaintiff was
represented by counsel but waived same. If the court please. Plaintiff
would direct the court's attention to.

1. "Mental Health Assessment Diagnostic Recommendation". Where the
   Federal defendant's claim on pg. 2 of this report listed as
   Ex.(b)(2); Here they state that the offender relapsed in October
   of '06, after passing of his Father.

It is clear from the Public record that Plaintiff was in custody the
entire month of October. See: Violation Report date April 4th 2007;
Where it states Plaintiff is to receive credit towards his re-parole
for time from 8/7/06 thru 11/20/06.

2. Defendant CSO Officer, James, charges Plaintiff with failure to
   submit to drug testing on 9/11/06 and 9/18/06.

Again, Plaintiff was in custody from 9/7/06 thru 11/20/06.

The Federal Officials who are non-medical staffers, have indirectly
sought measures through the issuance of warrants for Plaintiff's
arrest, to regulate the medical treatment Plaintiff receives. See:
Ex.(a)(5) date 3/20/07/, where a letter to CSO James states: Mr.
Epps needs to explore other pain medications management.

Plaintiff informed CSO Officer of all medications plaintiff was
taking and reported the same to Smart Drug Test Agency. See: Ex.(a)
Smart Drug Status Report Dated 2/6/07.

In furtherance, in opposition to defendants' motion, Plaintiff
argues that (1) Plaintiff claim against Attorney General, et.al., is
based on a Respondeat Superior theory that places him in violation

of Plaintiff's Constitutional rights by failure to insure that as an
employer he/she is liable for the wrongful acts as a result of his
employees. As such, as Master, owes duty to use care, to provide
that failure of servant to use care does not occur in course of
his/her employment. See: *Shell Petrolueum Corporation v. Magnolia
Pipe Line co., Tex. Civ. App.,85 S.W. 2d. 829,832*. Under doctrine an
employer is liable for injury to person or property of another
approximately resulting from acts of employee done within scope of
his/her employment in the employer's service. (Mid-Continent
Pipeline Co. v. Crauthers, Okl., 267 P.2d. 568,571).(2) Here,
DEFENDANT filed unfounded report which misrepresented facts in the
public record thereby falsely seeking a warrant for Plaintiff's
arrest. To this end, judgment based on qualified immunity is
inappropriate since there are disputed issues of material facts
related to circumstances of DEFENDANTS act of having plaintiff
arrested. (3) Plaintiff has adduced sufficient evidence to withstand
DEFENDANS' argument that his claim should be dismissed. Where
DEFEDNDANTS' make a very *colorable* argument for Summary Judgment,
this argument should fail since there are genuine issues of fact
related to these claims, they cannot be resolved by Summary
Judgment.

In furtherance, The Federal DEFEDNDANTS' have enlisted un –
substantiated charges in their memorandum and Points of Authority to
attempt to sway this court with three charges for which Plaintiff is
currently being held in detention for pending revocation by the same
Federal DEFENDANTS.

    Charge No. 1- Failure to submit to drug test on
    9/11/06,9/18/06,and 1/5,2/9,and 3/16/07.this charge is based on
    the information contained in the violation report dated, 2/6,and

3/27/07.


Charge No.2- Use of dangerous and Habit forming Drugs. The
releasee submitted urine specimens which tested positive for:
Cocaine and opiates on 2/5/07, cocaine on 2/16,3/2 and 3/9/07.


Charge No.3- Law Violation a) Misuse of Tags. b) Drug
 Paraphernalia c) Unregistered Vehicle.
    Plaintiff is Diabetic
  Warrant issued April 4th '07
  Here all charges were *none prosequi*


In *Morrissey,et al., v. Brewer, Warden, et al., id pg.500*; Paragraph
(2) the parolee is entitled to due process notice and a due process
hearing of the alleged violations including, for example, the
opportunity to be confronted by his accusers and to present evidence
and argument on his own behalf: And (3) the parolee is entitled to
the freedom granted a parolee until the results of the hearing are
known ad the parole board -- or other authorized state agency --
Acts *fn13
    id.at [33 L.Ed.Page 497] [66] If a violation of a condition of
parole is involved, rather than the commission of a new offense,
there should not be an arrest of the parolee and his return to the
prison or to a local jail *fn8 Rather, Notice of the alleged
violation should be given to the parolee and a time set for a
hearing.
    As Mr. JUSTICE BLACKMUN wrote, "this Court now has rejected the
concept that constitutional rights turn upon whether a governmental
benefit is characterized as a right or as a privilege." Graham v.
Richardson, 403 U.S. 365, 374 (1971). * fn10.

The parolee is not the only one who has a stake in his
conditional liberty. Society has a stake in whatever may be the
chance of restoring him to normal and useful life within the law.
Society thus has an interest in not having parole revoked because of
erroneous information or because of an erroneous evaluation of the
need to revoke parole, given the breach of parole conditions. See:
*People Ex Rel. Menechino v. Warden, 27 N.Y. 2d.376,379: and N. 2,
267 N.E. 2d 238, 239, and N.2(1971).*Parole board had less than full
picture of facts). And society has a further interest in treating
the Parole with basic fairness: Fair treatment in Parole revocations
will enhance the chance of rehabilitation by avoiding reactions to
arbitrariness.*fn11

Also See: *Taylor v. Malone 574 F. Supp. 609 (S.D.N.Y 11/10/83)*
" [19] A motion for summary judgment should be granted when there is
no genuine issue as to any material fact and the moving party is
entitled to judgment as a matter of law. Fed. R. Civ. (c). Although
the burden is on the moving party to show that no genuine issue of
fact exists. The non moving party may not rest on mere conclusury
allegations to show that an issue exists which should be resolved at
trial. See: Harlee v. Hagen 538 F. Supp. 389, 393 (E. D. N.Y.
1982)."

In *HARLOW ET AL. V. FITZGERALD [73 L. Ed. Page 811]* "Yet we
implicitly rejected such a derivative immunity in Butz. fn14
Moreover, in general our cases have followed a 'functional' approach
to immunity law. We have recognized that the judicial,
prosecutorial, and legislative functions require absolute immunity.
But this protection has extended no further than its justification
would warrant. In *Gravel*, for example, we emphasized that Senators
and their aides were absolutely immune only when performing 'acts

legislative in nature', and not when taking other acts even 'in their official capacity.' 408 U.S., at 625. See Hutchinson v. Proxmire, 443 U.S. 111,125-133 (1979). Our cases involving judges*fn15 and prosecutors*fn16 have followed a similar line." *(FITZGERALD* Supra @ 815 & 816) " The subjective element of the good - faith defense frequently has proved incompatible with our admonition in Butz that insubstantial claims should not proceed to trial. Rule 56 of the Federal Rules of Civil Procedure provides that disputed questions of fact ordinarily may not be decided on motions for summary judgment.*fn26 And an official's subjective good faith has been considered to be a question of fact that some courts have regarded as inherently requiring resolution by a jury.*fn27"

*(FITZGERALD* Supra @ *fn25) " In Wood the Court explicitly limited its holding to the circumstances in which a school board member, 'in the specific context of school discipline,' 420 U.S., at 322, would be striped of claimed immunity in an action under § 1983. Subsequent cases, however, have quoted the Wood formulation as a general statement of the qualified immunity standard. See, e.g., Procunier v. Navarette, 434 U.S. 555,562-563,566(1978), quoted in Baker v. McCollan, 443 U.S. 137, 139 (1979).

*fn26 Rule 56(c) states that summary judgment "shall be rendered forthwith if the leadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." In determining whether summary judgment is proper, a court ordinarily must look at the record in the light most favorable to the party opposing the motion, drawing all inferences most favorable to that

party. E.g., Poller v. Columbia Broadcasting System, Inc., 368 U.S. 464,473 (1962).


*fn 30 "…We have found previously, however, that it would be 'untenable to draw a distinction for purposes of immunity law between suits brought against state officials under § 1983 and suits brought directly under the Constitution against federal officials." Butz v. Economu, 438 U.S., at 504



Plaintiff offers the following Exhibits in support of his defense:

- ➢ See: Ex. (A) Smart Drug Report
- ➢ See: Ex. (2)(1) Natural Cocoa Tea Delisse
- ➢ See: Ex. (a)(2) Oxy Contin, THC Prescription Medications
- ➢ See: Ex. (a)(3) Nolle Prosequi
- ➢ See: Ex. (a)(4) Ticket Dismissed
- ➢ See: Ex. (a)(5) Memorandum From; Jamese Massey

Also See: Release Receipts from D.C. Superior Court related to Traffic Court and dismissal of Criminal Charges Level By Gov.;


In plain DEFENDATS cannot justify their action no matter how you look at it. If the Court please, Non - Medical Officials have even suggested that Plaintiff, "Needs to explore other pain medications management." Plaintiff has a number of illnesses that he is treated for. Plaintiff is currently at D.C. Jail for positive test related to his medical condition. The Federal DEFENDANTS continue to issue warrants that have no merit.

# CERTIFICATE OF SERVICE

**I HEREBY** certify that a copy of the foregoing cause of action be served by United States mail, postage prepaid

Copies to:

Kenneth Adebonojo
Assistant United States Attorney
Judiciary Center Building
555 4th St., N.W.
Washington, D.C. 20530

On this _11th_ day of _January_, 2008.


Larry Epps – DCDC 188-413
D.C. Detention Center
1901 D Street, S.E.
Washington, D.C, 20003

## CONCLUSION

If this matter came to trial before a jury, Plaintiff would offer into
evidence, the full public record in its entirety and not insufficient
misleading representations before this Honorable Court. Plaintiff if
given the chance to present the actual facts as they occurred, the
register at the CSO office will show that Plaintiff was arrested on
0/7/06, not 9/8/06. In furtherance, Plaintiff would further submit
that nothing in the public record supports the DEFENDANTS argument or
evidence to support a dismissal of Plaintiff's complaint. If the court
please, full disclosure of the public record will show that all of
Plaintiff's prescriptions prescribed by his doctor are medications
associated with Plaintiff's many illnesses.

For the above listed reasons, Plaintiff respectfully requests a
hearing on all issues in his complaint.

Respectfully Submitted,

District of Columbia

Subscribed and sworn to before me, in my presence,
this _10th_ day of _January_, 20_08_
by _Larry Epps_
_Bridget Reavis-Tyler_ Notary Public
My Commission Expires _9/30/2012_

BRIDGET REAVIS-TYLER
Notary Public, District of Columbia
My Commission Expires September 30, 2012

Larry D. Epps
DCDC 188-413
1901 D. Street, S.E.
Washington, D.C.
20003

## CERTIFICATE OF SERVICE

**I HEREBY** certify that a copy of the foregoing cause of action

be served by United States mail, postage paid

Attorney Kenneth Adebonojo
Assistant United States Attorney
Judiciary Center Building
555 4th St., N.W.
Washington, D.C. 20530

Larry Epps/DCDC 188-413
1901 D. Street, S.E.
D.C. Jail
Washington,D.C. 20003

MOTION FOR SERVICE OF PROCESS - 13

# CERTIFICATE OF SERVICE

**I HEREBY** certify that a copy of the foregoing cause of action be served by United States mail, postage prepaid

Copies to:

Kenneth Adebonojo
Assistant United States Attorney
Judiciary Center Building
555 4th St., N.W.
Washington, D.C. 20530

On this ___11th___ day of _January_ , 2008.

Larry Epps – DCDC 188-413
D.C. Detention Center
1901 D Street, S.E.
Washington, D.C, 20003

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| Larry D. Epps, | Civil Action No. 07-1188[RMC] |
|         Plaintiff, | (ECF) |
|     vs. | **ORDER** |
| ATTORNEY GENERAL,et al.., | |
|         Defendant | |

Upon consideration of Plaintiffs MOTION FOR Summery Judgment it is

    **ORDERED** that the motion is granted, and it is

    **FURTHER ORDERED** Defendants shall file answer or other wise

response by

this _____ day of _____,2008

                           _____

                           United States District
Judge

02/06/2007 18:28 FAX                                                      ☑002/011



### Court Services and Offender Supervision Agency
### for the District of Columbia

*Community Supervision Services*
*CJP Branch   Offender Empl/Voc Program*

### Alleged Violation(s) Report

2/6/2007

**To:**

The United States Parole Commission

5550 Friendship Boulevard
Chevy Chase, MD 20815



| | | | |
|---|---|---|---|
| **From:** | Emesha James<br>Community Supervision Officer | **Unit:** | Team 53 |
| | | **Telephone:** | (202) 585-7804 |
| **Please send<br>all inquiries<br>to:** | 1418 Good Hope Road<br>Washington, DC 20020 | **Fax:** | (202) 585-7840 |
| | | **Email:** | emesha.james@csosa.gov |

| | |
|---|---|
| **Subject:** | Non-Compliance with Parole |
| **Docket:** | F-9286-88B |
| **Offender:** | LARRY D EPPS |
| **Address:** | 113 Wilmington Place<br>Washington, DC 20032 |
| **FEDREG #:** | 36966-118 |
| **FBI #:** | 278412M4 |
| **DCDC #:** | 188-413 |
| **PDID #:** | 304-430 |

Action Recommended:  Warrant



EXHIBIT
5

Court Services and Offender Supervision Agency                                    Page 2

**Name:** Larry Epps
**PDID:** 304-430
**Subject:** Alleged Violation Report

▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓

LARRY D EPPS is a 52 year old male who was sentenced on 5/8/1989 to Not less than 12 years, not more than life for:

2nd Degree Murder

LARRY D EPPS started parole on 10/8/2005 with a full-term/expiration date of 10/8/2050. The offender has the following special conditions:
   Drug Testing
   Drug/Alcohol Treatment

▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓

Since 2/4/2007, LARRY D EPPS is alleged to have violated the following conditions and had the corresponding sanction(s) imposed:

Failed To Obey All Laws
        Sanction: 2/6/2007    AVR

This officer was informed by Pretrial Services on 2/5/07 that the offender was arrested on 2/4/07 for possession of drug paraphenialia with intent to use, misuse of tag and operating an unregistered auto.

Tested positive for an illegal substance.
        Sanction: 2/6/07    AVR
According to the drug status report the offender tested positive for cocaine and opiates on 2/5/07.

▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓

Larry D. Epps lives at 113 Wilmington Place Washington, DC 20032 and can be reached at (202) 561-0115 by telephone. Mr. Epps has been at this place of residence for 3 months. The last home verification was on 1/17/07 and was verified during an in person home visit.

Mr. Epps last reported employment with National Tire and Battery 12241 Nebel Street Rockville, MD. The offender has reported employment with the company since November 2006. However, the offender has not submitted any pay stubs for employment verification.

Mr. Epps was reinstated to parole supervision in November 2006. The offender reported to supervision upon release. The offender reported residence with his girlfriend Linda McNeal. Within 30 days of his release, the offender obtained employment with National Tire and Battery as a tire technician.

Court Services and Offender Supervision Agency                                    Page 3

**Name:** Larry Epps
**PDID:** 304-430
**Subject:** Alleged Violation Report

This officer was informed on 2/5/07, that Mr. Epps was rearrested for possession of drug paraphernalia with intent to use, misuse of tag and operating an unregistered auto. According to court view the offender is scheduled to attend a detention hearing on 2/12/07 in Dkt.# 2007 CMD-003027 for Possession of Drug Paraphernalia before Judge Wingo. The offender is also scheduled to appear for a status hearing on 4/29/07 in Dkt.# 2007-CTF-003029 for misuse of tag and unregistered auto before Judge McCarthy. According to the drug status report, at the time of lockup the offender tested positive for cocaine and opiates. This officer is awaiting GCMS verification and upon receipt will forward to USPC. At this time the offender is currently being detained at the Central Detention Facility.

This Community Supervision Officer concludes that the offender poses a potential risk for Community Supervision because he continues to participate in illegal activities. Therefore, this Community Supervision Officer is respectfully requesting a warrant.

Respectfully submitted,


_____                    2/6/2007
                                                    _____
                                                    (Date)
Emesha James
Community Supervision Officer
Telephone Number: (202) 585-7804


Approved by:


_____                    _____
                                                    (Date)
Joseph Alston
Supervisory Community Supervision Officer
Telephone Number: (202) 585-7803


cc: File

02/06/2007 18:28 FAX                                                    Ø 005/011
'05/2007 16:18 FAX 2025857501          SPECIAL PROJECTS      4 YEAR 55

8.00 24

**METROPOLITAN POLICE DEPARTMENT**
Washington, D.C.

ARREST/PROSECUTION REPORT          C.C. 401 5

| | | |
|---|---|---|
| . 163 Rev. 1/2002 | 1. PERSON NOTIFIED OF NAME CHANGE - UNIT - DATE/TIME - NCIC NO. (ID ONLY) | 2. ID NUMBER (ID ONLY) 304430 |
| INT ARREST NO. '0700533 | 3. DEFENDANT'S TRUE NAME - LAST, FIRST, MIDDLE (ID ONLY) | 4. CID NUMBER |
| Arresting Officer's Name Lafranchise, James M | 6. DEFENDANT'S NAME - LAST, FIRST, MIDDLE (At time of arrest) Washington, James | 7. SEA LAB NUMBER |
| GT  S-127  MPD  Badge #  Agency | | 11. PHONE NUMBER 202-561-0115 |

| 9. TYPE OF RELEASE | 10. NICKNAME / ALIAS | 14. TIME IN D.C. |
|---|---|---|
| ☐ CITATION ☐ BOND ☐ COLLATERAL | ► Epps, Larry Darnell | LIFE |
| 12. COURT DATE 2-5-06 | 15. ADDRESS (Include Room / Apt. No., City & State if Outside D.C.) ► 113 Wilmington Place SE #303 | 16. SOCIAL SECURITY NUMBER 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 |

| ☐ CHILD ABUSE | ☐ GANG | ☐ HATE | ☐ SENIOR CITIZEN | ☐ DOMESTIC VIOLENCE | 16. SEX ► Male | 17. RACE ► Black | 18. BIRTHDATE ► 10/13/55 | 56 | 19. BIRTHPLACE (City & State) Washington, D.C. |
|---|---|---|---|---|---|---|---|---|---|
| SPECIAL INTELLIGENCE | | | | | | | | | 27. CAUTION |

| NEED INTERPRETER ☐ YES ☐ NO | 21. HEIGHT 5'9" | 22. WEIGHT 150 | 23. HAIR Blk | 24. EYES Blk | 25. COMPLEX Med | 26. PERMIT NO/ST 1746286/DC | 30. ETHNICITY AA | 31. CAUTION |
|---|---|---|---|---|---|---|---|---|
| | | | | | 29. IMPERSONATOR? ☐ M ☐ F ☐ NO | | | |

| , CO-DEFENDANTS: Number ____ (If more than 3, list on back) NAME, ADDRESS, ZIP CODE AND PHONE NUMBER | 32. SCARS/MARKS/TATTOOS |
|---|---|
| | 33. HAT Brown  34. JACKET  35. PANTS Brown |
| | 36. COAT Brown  37. SHIRT Brown  38. SKIRT/DRESS |

| 39. WALES/NCIC CHECK | | |
|---|---|---|
| CHECK MADE BY (Name) | NCIC NUMBER | WARRANT ON FILE (If Yes, enter Warrant Numbers) Yes ☐ No ☐ |

| | | DATE OF OFFENSE ► 2-4-07 | TIME OF OFFENSE ► 0923 |
|---|---|---|---|
| 9. LOCATION OF OFFENSE (Exact Address, Include Room / Apt No.) ► 2100 Block Alabama Avenue Southeast | | DATE OF ARREST ► 2-4-07 | TIME OF ARREST ► 0925 |
| 0. LOCATION OF ARREST (Exact Address, Include Room / Apt No.) ► 2300 Block Alabama Avenue Southeast | ASSISTING OFFICER'S NAME, RANK, BADGE NO. & UNIT OR AGENCY ► | | |
| 42. ASSISTING OFFICER'S NAME, RANK, BADGE NO. & UNIT OR AGENCY | | | |

| DATE | TIME | LOCATION NOT ADVISED | 43. DEFENDANT ADVISED OF RIGHTS OFFICER'S NAME - ADVISING / COMPLETING PD FORM 47/47A | BADGE NO. | UNIT |
|---|---|---|---|---|---|

| 44. COMPLAINANTS / WITNESSES (If sworn member - Name, Rank, Badge No. and Unit) MORE ☐ See Back | | | |
|---|---|---|---|
| NAME - LAST, FIRST, M.I. ADDRESS - STREET, CITY, STATE, ZIP CODE | BIRTHDATE | HOME PHONE NO. | WORK PHONE NO. |
| W-1 ► Society | ADULT | | 202-698-1500 |
| W-2 ► Lafranchise, James M  2455 Alabama Avenue Southeast | | | |

| 47. PREMISES 29 - Vehicle | 48. SCHOOL ZONE PUBLIC HOUSING |
|---|---|
| 45. SPEC. OPS None | 46. TACTICS 4 - Traffic Stop | | |

| CHARGES | NCI OR WARRANT NUMBER | CCN | NPD DISPOS. | COLLAT/BOND RECEIPT NO. |
|---|---|---|---|---|
| 1. PDP With Intent to Use | | 016-018 | | |
| 2. Misuse of Tag | | 016-018 | | |
| 3. Operating an Unregistered Auto | | 016-018 | | |
| 4. | | | | |
| 5. | | | | |

| 50. PROPERTY RECOVERY / ITEMS OF EVIDENCE | 51. INITALS - DATE - UNIT OF PERSON TAKING PRINT | 53. RIGHT THUMB PRINT |
|---|---|---|
| PROPERTY BOOK/PAGE NO. )  CSE# NO. 1571 / 369  1281 / 37 | 52. M.O. WEAPONS, HANGOUTS, HABITS, INSTRUMENTS | |

25

| 4. ID USE ONLY | HEIGHT | WEIGHT | HAIR | EYES | COMPLEX | SCARS/MARKS/TATTOOS |
|---|---|---|---|---|---|---|

DISTRIBUTION: Page 1 to ID & R; Page 2 & 3 to Prosecutor, Page 4, Unit Copy, Page 5 Officer's Copy

COMPLETE ALL REQUIRED FIELDS AND MAKE FIVE COPIES FRONT TO BACK

02/06/2007 18:28 FAX                          SPECIAL PROJECTS                          ☑ 006/011

/2007 16:18 FAX 2025857501    SPECIAL PROJECTS

| | 55. EMPLOYMENT HISTORY (List present employment if any, on Line 1) | | | |
|---|---|---|---|---|
| | EMPLOYER | ADDRESS | BUS. PHONE | OCCUPATION |
| FROM -DATE -TO | MBT Tires | Rockville, MD | 301-881-6134 | Tire Repair |
| Present | | | | |

| | 56. NAMES OF LIVING FAMILY, RELATIVES, FRIENDS AND ASSOCIATES (Begin with immediate family) | | |
|---|---|---|---|
| | NAME - LAST, FIRST, M.I. | ADDRESS - STREET, CITY, STATE, ZIP CODE | PHONE NUMBER |
| RELATIONSHIP    DOB/AGE | | | |

MILITARY SERVICE: BRANCH/DATE FROM – TO     58. TELEPHONE CALL MADE  ☐ YES  ☒ NO  ☐ REFUSED     59. PHONE NUMBER

STATEMENT OF FACTS:   (Give a brief statement in your own words, of the facts surrounding the offense and the arrest. (Use Continuation Form PD 102A for additional space. Note present condition of any injured person(s). Do not give Witnesses' Names or Addresses. Refer to them as W1 or W2, etc as indicated in item 31.)

ne event occurred on 2-4-07 at approximately 0923 at 2100 Block Alabama Avenue Southeast in Washington DC.

n February 4, 2007, at approximately 0923 hours, while in the 2100 block of Alabama Avenue Southeast, Washington, D. C., the undersigned observed a grey Ford with one rear District of Columbia license plate and no inspetion/registration sticker displayed. A trafic top was initiated and the vehicle was stopped in the 2400 block of Alabama Avenue SE. The driver, later identified by DC driver's cense as Larry Epps, was advised why he was stopped. Mr. Epps was asked for his driver's license, registration and proof of insurance. Ir. Epps produced his license but stated that he was going to Auto Zone to get parts to fix the ehicle. A WALES check of the tag revealed that it is registered to a Toyota. Mr. Epps was then placed under arrest. A search incident to rrest revealed from his rear right pants pocket a rolled up piece of tiolet paper with a syringe with a clear liquid at the very tip and from ils front left pants pocket was a rubber tube that is commonly used to make a vien more visible for injecting heroin. Also found in the onsole next to where Mr. Epps was seated was a small plastic bottle that has been fashioned into a makeshift pipe commonly used to moke crack cocaine. Mr. Epps was asked if he was on parole or probation and he stated he was. When asked what for he stated Murder. Mr. Epps was then asked if his urine would be dirty and he stated probably. The undersigned then asked Mr. Epps the last time he used heroin and he stated last night. Mr. Epps was then transported to the 7th District where he was processed further.

Mr. Epps was subsequently identified as James Washington form prior arrests.
A WALES check of the Vehicle Identification Number of 1FMDU34X6NUA98736 revealed that the vehicle was once registered in Virginia but the registration has lapsed.

61. DEFENDANT'S VERSION/REMARKS:  (What did defendant say about the offense or his/her whereabouts at the time of offense?  (Use PD 119 for defendant's written statement.))

SEE ABOVE

| | | | 84. PROPERTY BOOK/PAGE NO. PRISONER'S PROPERTY ONLY |
|---|---|---|---|
| 62. RECORD CLERK'S NAME | 3. | 5. | |
| ARREST RECORD SUMMARY | 4. | 6. | |
| 1. | 2. | | |

65. BAIL REFORM ACT CASES:  Was a statement made by defendant in reference to his/her failure to appear?  ☐ Yes  ☐ no    (If yes, include in Defendant's Version/Remarks Section above.)

| 66. PRINTED NAME - OFFICER MAKING STATEMENT | BADGE NUMBER | RANK | 66. SIGNATURE OF REVIEWING OFFICIAL | UNIT | DATE |
|---|---|---|---|---|---|
| Lafranchise, James M | S-127 | SGT | | 7D | 2/4/07 |
| 67. SIGNATURE OF OFFICER MAKING STATEMENT | UNIT | DATE | | | |
| | 7D | 2/4/2007 | | | |

Ex.(A)

# SMART
## Drug Status Report

**Offender Data**    **Name:** LARRY EPPS

**PDID:** 304430

**DCDC:** 188413

Printed By: Emesha James - CSO

Date/Time: 2/6/2007 4:04 PM

**Drug Testing Information**

| Test Date | Description | AMP | COC | METH | OPI | PCP | MARI | ALC | CREA | Result Status | Compl | Specimen# |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 2/5/2007 | Lock Up | Neg | Pos | - | Pos | Neg | - | - | Neg | | - | 31580304 |
| 2/2/2007 | Surveillance | - | - | - | - | - | - | - | - | InTransit | - | 31578619 |
| 1/26/2007 | Surveillance | - | - | - | - | - | - | - | - | InTransit | - | 31567191 |
| 1/19/2007 | Surveillance | - | - | - | - | - | - | - | - | RcvdInLab | - | 31555461 |

Oral Fluid Test Results: Positive for Cannabinoids. Negative for Amphetamine, Methamphetamine/MDMA (Ecstasy), Opiates, Cocaine, and Phencyclidine.

| | | | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 1/12/2007 | Surveillance | - | - | - | - | - | - | - | - | RcvdInLab | - | 31545721 |

Oral Fluid Test Results: Positive for Cannabinoids. Negative for Amphetamine, Methamphetamine/MDMA (Ecstasy), Opiates, Cocaine, and Phencyclidine.

| | | | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 1/5/2007 | Surveillance | - | - | - | - | - | - | - | - | NoReport | - | 31533795 |
| 12/29/2006 | Surveillance | - | - | - | - | - | - | - | - | RcvdInLab | - | 31524501 |

Oral Fluid Test Results: Positive for Cannabinoids. Negative for Amphetamine, Methamphetamine/MDMA (Ecstasy), Opiates, Cocaine, and Phencyclidine.

| | | | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 12/22/2006 | Surveillance | - | - | - | - | - | - | - | - | RcvdInLab | - | 31515301 |

Oral Fluid Test Results: Negative for Amphetamine, Methamphetamine/MDMA (Ecstasy), Cannabinoids, Cocaine, Opiates, and Phencyclidine.

| | | | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 12/15/2006 | Surveillance | - | - | - | - | - | - | - | - | RcvdInLab | - | 31502970 |

Oral FLuid Results: Positive for Cannabinoids.

| | | | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 12/8/2006 | Surveillance | - | - | - | - | - | - | - | - | RcvdInLab | - | 31490956 |

Oral Fluid Results: Negative

| | | | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 12/1/2006 | Surveillance | - | - | - | - | - | - | - | - | InTransit | - | 31478861 |
| 11/24/2006 | Placement | - | - | - | - | - | - | - | - | RcvdInLab | - | 31468423 |

Oral Fluid Results: Negative

| | | | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 9/18/2006 | Surveillance | - | - | - | - | - | - | - | - | NoReport | - | 31355217 |

Drug testing suspended due to multiple failures to report

| | | | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 9/11/2006 | Surveillance | - | - | - | - | - | - | - | - | NoReport | - | 31343193 |
| 8/28/2006 | Surveillance | - | - | - | - | - | - | - | - | RcvdInLab | - | 31321843 |

Oral Fluid Test Results: Positive for Cocaine and Cannabinoids. Negative for Amphetamine, Methamphetamine/MDMA (Ecstasy), Opiates, and Phencyclidine.

| | | | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 8/21/2006 | Surveillance | - | - | - | - | - | - | - | - | NoReport | - | 31309927 |
| 8/14/2006 | Surveillance | - | - | - | - | - | - | - | - | RcvdInLab | - | 31298025 |

Oral Fluid Test Results: Positive for Cocaine and Opiates. Negative for Amphetamine, Methamphetamine/MDMA (Ecstasy), Cannabinoids, and Phencyclidine.

| | | | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 8/9/2006 | Surveillance | - | - | - | - | - | - | - | - | RcvdInLab | - | 31293238 |

Oral Fluid Test Results: Positive for Cocaine and Opiates. Negative for Amphetamine, Methamphetamine/MDMA (Ecstasy), Cannabinoids, and Phencyclidine.

The information contained is for official use only and is protected by the Federal Privacy Act of 1974, 5 U.S.C. §552a (2000).

P1 of 3

# SMART
## Drug Status Report

| Offender Data | Name: | LARRY EPPS | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|
| | PDID: | 304430 | | | | | | | | | |
| | DCDC: | 188413 | | | | Printed By: Emesha James - CSO | | | | | |
| | | | | | | Date/Time: | | 2/6/2007 4:04 PM | | | |

### Drug Testing Information

| Test Date | Description | AMP | COC | METH | OPI | PCP | MARI | ALC | CREA | Result Status | Compl | Specimen# |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 6/15/2006 | Surveillance | - | | - | - | - | - | - | | NoReport | - | 31200057 |
| | Drug testing suspended due to multiple failures to report | | | | | | | | | | | |
| 6/12/2006 | Surveillance | - | | - | - | - | | - | | NoReport | - | 31192887 |
| 6/8/2006 | Surveillance | - | | - | - | - | | - | | NoSubmit | - | 31188505 |
| 6/5/2006 | Surveillance | - | | - | - | - | | - | | NoReport | - | 31181043 |
| 6/1/2006 | Surveillance | - | | - | - | - | | - | | NoSubmit | - | 31178846 |
| 5/18/2006 | Surveillance | - | | - | - | - | | - | | NoReport | - | 31154940 |
| | Drug testing suspended due to multiple failures to report | | | | | | | | | | | |
| 5/15/2006 | Surveillance | - | | - | - | - | | - | | NoReport | - | 31147508 |
| 5/11/2006 | Surveillance | - | | - | - | - | | - | | Unable | - | 31143624 |
| 5/8/2006 | Surveillance | - | | - | - | - | | - | | NoReport | - | 31136367 |
| 5/5/2006 | Surveillance | - | | - | - | - | | - | | NoSubmit | - | 31135819 |
| | ~~Offender provided RX Percocet 5-325 and Dihexofen tabs both dated 4/3/06 and Endocet 5-325 mg filed 4/13/06 and Martnol 5mg.~~ | | | | | | | | | | | |
| 4/6/2006 | Surveillance | - | | - | - | | - | - | | Suspend | - | 31082988 |
| | Due to 2nd failure to appear. | | | | | | | | | | | |
| 4/3/2006 | Surveillance | - | | - | - | - | | - | | NoReport | | 31075262 |
| 3/30/2006 | Surveillance | - | Neg | - | Pos | - | Pos | - | Neg | - | - | 31070921 |
| 3/27/2006 | Surveillance | - | Pos | - | Pos | - | Pos | - | Neg | - | - | 31065804 |
| 3/20/2006 | Surveillance | - | | - | - | - | | - | | NoReport | - | 31051278 |
| | Drug testing suspended due to multiple failures to report | | | | | | | | | | | |
| 3/16/2006 | Surveillance | - | | - | - | - | | - | | NoReport | - | 31046599 |
| 3/13/2006 | Surveillance | - | Neg | - | Neg | - | Pos | - | Neg | - | - | 31038943 |
| 3/9/2006 | Surveillance | - | Neg | - | Neg | - | Pos | - | Neg | - | - | 31034218 |
| 3/6/2006 | Surveillance | - | | - | - | - | | - | | NoReport | - | 31026524 |
| 3/2/2006 | Surveillance | - | Neg | - | Neg | - | Pos | - | Neg | - | - | 31021881 |
| 2/27/2006 | Surveillance | - | Neg | - | Neg | - | Pos | - | Neg | - | - | 31014095 |
| 2/23/2006 | Surveillance | - | Neg | - | Neg | - | Pos | - | Neg | - | - | 31009288 |
| 2/16/2006 | Surveillance | - | Neg | - | Neg | - | Pos | - | Neg | - | - | 30999413 |
| 2/13/2006 | Surveillance | - | | - | - | - | | - | | NoReport | | 30991877 |
| 2/9/2006 | Surveillance | - | Neg | - | Neg | - | Pos | - | Neg | - | | 30987145 |
| 2/6/2006 | Surveillance | - | | - | - | - | | - | | NoReport | | 30979471 |

The information contained is for official use only and is protected by the Federal Privacy Act of 1974, 5 U.S.C.§552a (2000).

# SMART
## Drug Status Report

| Offender Data | Name: | LARRY EPPS | | | | | | |
|---|---|---|---|---|---|---|---|---|
| | PDID: | 304430 | | Printed By: | Emesha James - CSO | | | |
| | DCDC: | 188413 | | Date/Time: | 2/6/2007 4:04 PM | | | |

**Drug Testing Information**

| Test Date | Description | AMP | COC | METH | OPI | PCP | MARI | ALC | CREA | Result Status | Compl | Specimen# |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 2/2/2006 | Surveillance | - | Neg | - | Neg | - | Pos | - | Neg | | - | 30974568 |
| 1/30/2006 | Surveillance | - | | - | | - | | - | | NoReport | - | 30967254 |
| 1/26/2006 | Surveillance | - | Neg | - | Neg | - | Pos | - | Neg | | - | 30962448 |
| 1/23/2006 | Surveillance | - | - | - | - | - | | | | NoReport | - | 30954739 |
| 1/19/2006 | Surveillance | - | Neg | - | Neg | - | Pos | - | Neg | | - | 30949887 |
| 1/12/2006 | Surveillance | - | Neg | - | Neg | - | Pos | - | Neg | | - | 30940033 |
| 1/9/2006 | Surveillance | - | | - | | - | | - | | NoReport | - | 30932252 |
| 1/5/2006 | Surveillance | - | Neg | - | Neg | - | Neg | - | | | - | 30927698 |
| 12/29/2005 | Surveillance | - | Neg | - | Neg | - | Neg | - | | | - | 30918474 |
| 12/22/2005 | Surveillance | - | Neg | - | Neg | - | Neg | - | | | - | 30909270 |
| 12/19/2005 | Surveillance | - | Neg | - | Neg | - | Neg | - | | | - | 30901443 |
| 12/15/2005 | Surveillance | - | - | - | - | - | | - | | NoReport | - | 30896699 |
| 12/12/2005 | Surveillance | - | Neg | - | Neg | - | Neg | - | | | - | 30888927 |
| 12/8/2005 | Surveillance | - | Neg | - | Neg | - | Neg | - | | | - | 30884439 |
| 12/5/2005 | Surveillance | - | Neg | - | Neg | - | Neg | - | | | - | 30876769 |
| 12/1/2005 | Surveillance | - | Neg | - | Neg | - | Neg | - | | | - | 30874648 |
| 12/1/2005 | Surveillance | - | - | - | - | - | | - | | InsuffQty | - | 30872109 |
| 11/28/2005 | Surveillance | - | Neg | - | Neg | - | Neg | - | | | - | 30864770 |
| 11/21/2005 | Surveillance | - | Neg | - | Neg | - | Neg | - | | | - | 30855351 |
| 11/17/2005 | Surveillance | - | Neg | - | Neg | - | Neg | - | | | - | 30850459 |
| 11/14/2005 | Surveillance | - | Neg | - | Neg | - | Neg | - | | | - | 30842745 |
| 11/10/2005 | Surveillance | - | Neg | - | Neg | - | Neg | - | | | - | 30839567 |
| 11/7/2005 | Surveillance | - | Neg | - | Neg | - | Neg | - | | | - | 30831830 |
| 11/3/2005 | Surveillance | - | Neg | - | Neg | - | Neg | - | | | - | 30826861 |
| 10/31/2005 | Surveillance | - | Neg | - | Neg | - | Neg | - | | | - | 30819201 |
| 10/27/2005 | Surveillance | - | Neg | - | Neg | - | Neg | - | | | - | 30814590 |
| 10/24/2005 | Surveillance | - | Neg | - | Neg | - | Neg | - | | | - | 30806836 |
| 10/20/2005 | Placement | Neg | Neg | Neg | Neg | Neg | Neg | Neg | | | - | 30804736 |
| 10/12/2005 | Initial test | - | Neg | - | Neg | - | Neg | - | | | - | 30789005 |

Marijuana metabolite (THC-COOH) confirmed by GCMS. GCMS results consistent with medication provided.

The information contained is for official use only and is protected by the Federal Privacy Act of 1974, 5 U.S.C. §552a (2000).

## Emesha James

**From:**   Jamese Massey
**Sent:**   Monday, March 12, 2007 4:29 PM
**To:**     Emesha James
**Subject:** FW: Offender Larry Epps PDID # 304-430

Hello Ms. James:

I sent you this e-mail concerning the medications and offender receiving a medical clearance from his primary care doctor. CSOSA cannot refer client's to any CSOSA vendor program while offenders are taking prescribed Opiate based medications. Mr. Epps is also being prescribed Marinol which is a cannabinoid.

From

Jamese B. Massey, TS
202-585-7615

**From:** Jamese Massey
**Sent:** Monday, March 05, 2007 10:35 AM
**To:** Emesha James
**Subject:** Offender Larry Epps PDID # 304-430
**Importance:** High

Please be advised that the above offender was evaluated on 2/26/07. Based on the evaluation the offender appears to be a good candidate for detox and long term inpatient treatment. Due to the Agency's limited treatment resources, CIT has implemented a system for prioritizing offenders in need of treatment. Cases are prioritized by evaluating each case in the areas of public safety; amenability to treatment; prior treatment history; and medical/mental health issues.

After reviewing this case, client reports that he has a host of medical problems and is taking lots of medications. He states that the medications prescribed for him is causing him to test positive. Please be advised, clients cannot be referred to any CSOSA vendor program while taking prescribed opiate based medications. A lab provided prescriptions to the lab for Endocet and Doxazoxin Mes on 3/3/06. There was another prescription filled for Endocet on 4/13/06. The assessor researched the medications and Roxicet is a combination of a narcotic, Oxycodone a non-narcotic Acetaminophen used to relieve pain. The medication called is a combination of Oxycodone acetaminophen. Marinol was confirmed by the urine lab on one cannabinoid is being prescribed by his health care provider. The offender has been Mr. Epps was instructed to bring in the medications he is currently taking. Mr. Epps will need a medical clearance from his doctor indicating that he is medically clear to go in treatment. The offender needs to explore other pain medication management. In the meantime, I encouraged client to attend twelve step support groups, such as Alcoholic Anonymous and Narcotic Anonymous Meetings in the community. Please be advised that CSOSA is not legally permitted to compel participation in twelve step support groups. This offender should be given the option of participating.

A listing of available community-based treatment resources is available in the DC Cure Directory. The Cure Director can be accessed on the CSOSA WEB under "Links and Resources".

Please contact CIT should there be a change in the offender's status that requires immediate attention from CIT. Please feel free to contact me or the Acting Supervisory Treatment Specialist, Kevin Moore should you have any questions regarding this report.

Sincerely,

3/20/2007

Jamese B. Massey, BS, CAC II
Treatment Specialist
202-585-7615
202-585-7613 (fax)

3/20/2007

1020                    36 GEO. L.J. ANN. REV. CRIM. PROC. (2007)

officials performing judicial acts.[3043]

---

Morrison v. Lipscomb, 877 F.2d 463, 466 (6th Cir. 1989) (chief judge of judicial district not absolutely immune for executive action declaring moratorium on issuance of writs of restitution); Kurowski v. Krajewski, 848 F.2d 767, 775 (7th Cir. 1988) (judge not absolutely immune for termination of former public defenders who did not share judge's political beliefs); Meek v. County of Riverside, 183 F.3d 962, 966 (9th Cir. 1999) (municipal judges not absolutely immune for administrative actions when voting to terminate court commissioner because of commissioner's campaign for judicial office). Special masters performing judicial functions enjoy absolute immunity. See Gabbert v. Conn, 131 F.3d 793, 806 (9th Cir. 1997) (special master eligible for absolute immunity for all actions pursuant to role as special master), rev'd on other grounds, 526 U.S. 286 (1999).

3043. Courts have granted absolute immunity to parole board members, parole officers, and grand jurors. See Imbler v. Pachtman, 424 U.S. 409, 423 n.20 (1976) (grand jurors absolutely immune when acting within scope of duties); see, e.g., Montero v. Travis, 171 F.3d 757, 760 (2d Cir. 1999) (parole board officials absolutely immune for decision whether to grant, deny, or revoke parole); Harper v. Jeffries, 808 F.2d 281, 284 (3d Cir. 1986) (state parole board examiner absolutely immune for parole revocation based on false information); Hulsey v. Owens, 63 F.3d 354, 357 (5th Cir. 1995) (per curiam) (director and general counsel for parole board absolutely immune for inmate's parole revocation); Crenshaw v. Baynerd, 180 F.3d 866, 867-68 (7th Cir. 1999) (Civil Rights Commissioners entitled to absolute quasijudicial immunity in adjudicative capacity); Mayorga v. Mo., 442 F.3d 1128, 1131 (8th Cir. 2006) (parole board members absolutely immune for misclassification of plaintiff as sex offender); Malek v. Haun, 26 F.3d 1013, 1014-15 (10th Cir. 1994) (parole board members absolutely immune for decisions related to parole hearings); Holmes v. Crosby, 418 F.3d 1256, 1258 (11th Cir. 2005) (parole board members absolutely immune for decision to revoke parole). But see, e.g., Lanier v. Fair, 876 F.2d 243, 253 (1st Cir. 1989) (parole board members not absolutely immune with respect to rescission of reserve parole date, although entitled to qualified immunity); Scotto v. Almenas, 143 F.3d 105, 111 (2d Cir. 1998) (parole officer not absolutely immune for officer's alleged acts of falsely preparing parole violation report and recommending that warrant be issued for parolee's arrest, although officer signing warrant entitled to absolute immunity); Dawson v. Newman, 419 F.3d 656, 662 (7th Cir. 2005) (parole board members not absolutely immune for allegations of failing to investigate plaintiff's entitlement to release in ordinary course of everyday duties); Swift v. Cal., 384 F.3d 1184, 1191 (9th Cir. 2004) (parole officers not absolutely immune for investigation of alleged parole violations).

Other individuals who may benefit from absolute immunity because of their judicially-related activities include: (1) court-appointed psychiatrists; (2) social workers; (3) hearing examiners; (4) federal and state probation officers; and (5) court clerks and reporters. See, e.g., Rodriguez v. Weprin, 116 F.3d 62, 67 (2d Cir. 1997) (court clerks absolutely immune for "functions . . . undertaken pursuant to the explicit direction of a judicial officer"); Williams v. Consovoy, 453 F.3d 173, 178-79 (3d Cir. 2006) (private psychologist absolutely immune because performed evaluation at request of parole board); Mays v. Sudderth, 97 F.3d 107, 113-14 (5th Cir. 1996) (sheriff absolutely immune for strict compliance with facially valid judicial order); Rippy v. Hattaway, 270 F.3d 416, 422-23 (6th Cir. 2001) (social workers absolutely immune for initiating judicial proceedings against those suspected of child abuse or neglect because such actions intimately related to judicial phase of prosecutorial proceedings); Kincaid v. Vail, 969 F.2d 594, 601 (7th Cir. 1992) (state court clerks absolutely immune from claim of wrongly refusing to file prisoner's complaint); Dornheim v. Sholes, 430 F.3d 919, 925 (8th Cir. 2005) (court-appointed medical experts absolutely immune for their reporting and counseling functions); Doe v. Lebbos, 348 F.3d 820, 826 (9th Cir. 2003) (social worker absolutely immune for actions in child dependency proceedings); Lundahl v. Zimmer, 296 F.3d 936, 939 (10th Cir. 2002) (clerk and chief deputy clerk absolutely immune from money damages for their refusal to enter default judgment in another suit); Roth v. King, 449 F.3d 1272, 1287 (D.C. Cir. 2006) (director of public defender services absolutely immune in appointment of attorneys to represent indigent persons). But see, e.g., Hatch v. Dep't for Children, Youth & Their Families, 274 F.3d 12, 24-25 (1st Cir. 2001) (case workers not absolutely immune for investigating allegations of abuse and for taking child into custody if acting upon reasonable suspicion of abuse); DiBlasio v. Novello, 344 F.3d 292, 301-02 (2d Cir. 2003) (medical officials not absolutely immune for proceeding resulting in summary suspension of radiologist because "insufficiently similar to a judicial proceeding"); Harper v. Jeffries, 808 F.2d 281, 284 (3d Cir. 1986) (probation officer not absolutely immune for issuing warrant on allegedly false information because conduct more executive than judicial in nature); Rippy v. Hattaway, 270 F.3d 416, 423 (6th Cir. 2001) (social worker not absolutely immune for promulgation and enforcement of policies because such actions not related to judicial phase of child custody proceedings); Snyder v. Nolen, 380 F.3d 279, 288-89 (7th Cir. 2004) (court clerk not absolutely immune for refusing to file pleadings when acting absent judicial direction); Ramirez v. Okla. Dep't of Mental Health, 41 F.3d 584, 592 (10th Cir. 1994) (hearing officers not absolutely immune for violation of civil rights arising from disciplinary actions taken against nurse and psychiatrist).

Witnesses, including police officers, are also granted absolute immunity. See Briscoe v. LaHue, 460

---

Even if absolute discretionary functi liability for civil d

---

U.S. 325, 345-46 (1983
e.g., Malachowski v. Ci
absolutely immune for
Sykes v. James, 13 F.3
perjurious affidavit in pr
277-78 (5th Cir. 2001)
Satterfield, 167 F.3d 99:
during criminal trial, no
284 (7th Cir. 1995) (po
preliminary hearing and
Cir. 2001) (police office
Glanz, 948 F.2d 1562, 1
at trial); Jones v. Canno
grand jury testimony). I
1984) (police officer no
City of Louisville, 444
pretrial fabrication of e
(7th Cir. 1992) (police
warrant was based on st

Police officers are als
e.g., Alioto v. City of Sl
alleged conspiracy to gi
F.2d 190, 192 (7th Cir.)
giving perjured testimo
(1989); Hunt v. Bennett
alleged conspiracy to c
84 (2d Cir. 1994) (poli
false testimony); News
immune for inducing e
981 (9th Cir. 2001) (
conduct or for any con
carry out judges' order
599 (8th Cir. 2006) (w
court orders); Valdez
absolutely immune for

Legislators have abs
Woods v. Gamel, 132 F
funding level because t

3044. See, e.g., Sav
to qualified immunity i
presence of probable c
exercising discretiona
450-51 (4th Cir. 2004
because performing di
rel. Hernandez v. Tex.
curiam) (social worke
performing discretion:
424 (6th Cir. 2001)
procedures because su
Cir. 2006) (police det
performing discretion:
F. 3d 1122, 1137) (:
suspected of abuse in
v. Herrington, 381 F.:
shooting of pedestriar
suicide attempt"). But
entitled to qualified i
nurse's compliance w
tion); McCullough v.

35 GEO. L.J. ANN. REV. CRIM. PROC. (2006)

sentence is justified,[2404] and a system of appeal and review to determine the appropriateness of the death sentence in individual cases.[2405]

In addition, the Act requires courts to instruct juries not to consider "the race, color, religious beliefs, national origin, or sex of the defendant or any victim."[2406] Finally, the Act mandates the assignment of two counsel to defendants in capital cases[2407] and exempts from death eligibility pregnant women, persons with mental retardation, and persons incapable of comprehending the meaning of the death penalty.[2408]

# PAROLE

*Parole Release From Incarceration.*    State prisoners do not have a constitutionally protected interest in receiving parole unless a statute contains mandatory language that requires the parole board to grant parole in certain situations.[2409] When such mandatory language exists, a prisoner has a legitimate expectation of parole or "liberty interest" that cannot be denied without due process.[2410] For example, the

----

discretion in determining whether aggravating factors outweigh mitigating evidence; mercy not precluded from entering into equation), *vacated on other grounds*, 536 U.S. 953 (2002); U.S. v. McVeigh, 153 F.3d 1166, 1212 (10th Cir. 1998) (capital defendant's claim that he played lesser role in conspiracy to bomb federal building recognized as mitigating factor under Act's "catch-all" mitigating factor, though defendant could not meet elements of explicit statutory mitigating factor). The Act breaks up aggravating circumstances by crime, listing the circumstances the jury must consider for espionage and treason, *see* § 3592(c), homicide, *see* § 3592(c), and drug offenses, *see* § 3592(d).

2404. *See* § 3593; *see, e.g.*, U.S. v. Fell, 360 F.3d 135, 145-46 (2d Cir. 2004) (Federal Death Penalty Act's narrow balancing standard and trial court's discretion ensure individualized sentencing and therefore meets constitutional requirements); U.S. v. Hall, 152 F.3d 381, 393 (5th Cir. 1998) (no federal common law right of defendant to allocate unsworn to jury when inconsistent with sentencing scheme). There are three highlights to the special hearing authorized under the Act. First, the Act requires that a defendant be given reasonable notice that the government will seek to impose the death penalty. *See* § 3593(a). Second, the Act itself sets up a special evidentiary standard to be employed during this special hearing. *See* § 3593(c). Specifically, all evidence will be admitted "regardless of its admissibility under the rules governing admission of evidence at criminal trials" and will only be excluded if "its probative value is outweighed by the danger of creating unfair prejudice, confusing the issues, or misleading the jury." *Id.*; *see, e.g.*, U.S. v. McVeigh, 153 F.3d 1166, 1212 (10th Cir. 1998) (lack of explicit standard regarding exclusion of evidence cured by discretion given to trial judge to control presentation of information to jury). Third, the jury is required to return special findings with respect to the existence or absence of any of the aggravating or mitigating circumstances. *See* § 3593(d). In addition, the Act provides that a finding of a statutory aggravating circumstance must be unanimous, while the finding of the existence of a statutory mitigating circumstance may be established by a single jury member. *See id.* Furthermore, the Act directs the jury to "consider whether all the aggravating factor or factors found to exist sufficiently outweigh all the mitigating factor or factors found to exist to justify a sentence of death." § 3593(e).

2405. *See* § 3595.

2406. § 3593(f).

2407. *See* 18 U.S.C. § 3005 (2000).

2408. § 3596(b)-(c).

2409. *See* Greenholtz v. Inmates of Neb. Penal & Corr. Complex, 442 U.S. 1, 12 (1979). Two years after *Greenholtz*, the Supreme Court held that a statute governing a commutation policy did not give rise to a protected liberty interest even though the Board of Pardons granted favorable rulings seventy-five percent of the time. *See* State Bd. of Pardons v. Dumschat, 452 U.S. 458, 465 (1981). In *Dumschat*, the Court distinguished an expectation of parole release based on a mandatory statutory provision from an expectation of a pardon based on the statistical percentage of prior pardons granted. *See id.* The Court held that the pardon procedure did not give rise to a protected liberty interest because the statute gave the Board unlimited discretion. *See id.* at 466.

2410. *See Greenholtz*, 442 U.S. at 11-12 (statutory language dictating that board "shall" release inmate "unless" 1 of 4 reasons is found created presumption that parole release would be granted and gave rise to legitimate expectation and some constitutional protection); *see, e.g.*, Huston v. Dowd, 960 F.2d 718, 720 (8th Cir. 1992) (per curiam) (state statute mandating parole once all statutory and regulatory guidelines were met created liberty interest); Biggs v. Terhune, 334 F.3d 910, 914-15 (9th Cir. 2003) (state statute mandating parole board set release date unless board determines that certain factors undermine its ability

Case 1:07-cv-01188-RMC    Document 19-2    Filed 01/15/2008    Page 13 of 18

35 Geo. L.J. Ann. Rev. Crim. Proc. (2006)                                                781

rmine the appropri-

consider "the race,
or any victim."²⁴⁰⁶
fendants in capital
ersons with mental
ning of the death

: a constitutionally
andatory language
ns.²⁴⁰⁹ When such
ation of parole or
For example, the

e; mercy not precluded
. v. McVeigh, 153 F.3d
in conspiracy to bomb
g factor, though defen-
breaks up aggravating
onage and treason, see

Federal Death Penalty
alized sentencing and
Cir. 1998) (no federal
h sentencing scheme).
the Act requires that a
the death penalty. See
yed during this special
its admissibility under
luded if "its probative
ues, or misleading the
k of explicit standard
ontrol presentation of
ect to the existence or
In addition, the Act
s, while the finding of
jury member. See id.
or or factors found to
justify a sentence of

12 (1979). Two years
olicy did not give rise
e rulings seventy-five
51). In Dumschat, the
ry provision from an
d. See id. The Court
e the statute gave the

"shall" release inmate
anted and gave rise to
d, 960 F.2d 718, 720
regulatory guidelines
. 2003) (state statute
undermine its ability

Court has found that a Nebraska statute governing parole eligibility created a protected liberty interest because it provided that the parole board "shall" release an inmate "unless" it concludes that circumstances require otherwise.²⁴¹¹ Similarly, a Montana statute governing parole eligibility created a protected liberty interest by requiring that the parole board "shall" release an inmate "when" specified criteria are met.²⁴¹² Conversely, state statutes and regulations that merely state that the parole board "may" release an inmate if certain criteria are met do not create a liberty interest protected by the Due Process Clause.²⁴¹³

When a statute gives an inmate a liberty interest in parole, an informal hearing where the inmate has an opportunity to present letters and statements on his behalf satisfies due process.²⁴¹⁴ In contrast, other types of hearings, such as disciplinary²⁴¹⁵

---

to set date created generally protected liberty interest upon incarceration of inmate).

2411. *See* 442 U.S. at 11.

2412. *See* Bd. of Pardons v. Allen, 482 U.S. 369, 376-78 (1987).

2413. *See id.* at 378-79 & n.10; *see, e.g.*, Barna v. Travis, 239 F.3d 169, 171 (2d Cir. 2001) (per curiam) (state statute establishing primacy of severity of crime and past criminal history in parole decisions did not create liberty interest); Vann v. Angelone, 73 F.3d 519, 522-23 (4th Cir. 1996) (state statute making inmates convicted of 3 separate offenses ineligible for parole gives Board of Corrections discretion to decide if offenses stem from same situation and, therefore, does not create liberty interest); Malchi v. Thaler, 211 F.3d 953, 957 (5th Cir. 2000) (delay in considering defendant for parole did not give rise to constitutional claim because discretionary nature of Texas parole statute makes expectancy of parole too speculative); Heidelberg v. Ill. Prisoner Review Bd., 163 F.3d 1025, 1026-27 (7th Cir. 1998) (per curiam) (state statute using apparently mandatory "shall not" language did not create liberty interest in parole because Board given complete discretion to grant parole when denial not mandated by statute); Adams v. Agniel, 405 F.3d 643, 645 (8th Cir. 2005) (per curiam) (state statute provides for complete discretion by parole board in granting parole, therefore inmate has no liberty interest in parole); James v. U.S. Parole Comm'n, 159 F.3d 1200, 1206 (9th Cir. 1998) (Parole Commission's internal guidelines did not create liberty interest because they were meant to be interpretive, not to carry force of law); Martinez v. Flowers, 164 F.3d 1257, 1260 (10th Cir. 1998) (federal statute providing that inmate's sentence "may be reduced" did not create liberty interest for inmate with prior violent crime conviction because statute limited eligibility to prisoners convicted of nonviolent offenses and gave board broad discretion to grant sentence reduction); Cook v. Wiley, 208 F.3d 1314, 1322-23 (11th Cir. 2000) (federal statute allowing parole board to exercise discretion when reducing sentence of prisoners convicted of nonviolent crimes did not create liberty interest); Madley v. U.S. Parole Comm'n, 278 F.3d 1306, 1311 (D.C. Cir. 2002) (inmate denied parole based on attempted burglary charge that was dropped does not have liberty interest in parole).

The Ninth Circuit has held that a prisoner sentenced without the possibility of parole who received several administrative reviews while in prison, each confirming parole, had a liberty interest in parole. The government, therefore, was estopped from revoking parole when the error was discovered fifteen months after release. *See* Johnson v. Williford, 682 F.2d 868, 871-73 (9th Cir. 1982). Because the parole expectation was created shortly after the parolee began the sentence and was heightened by successive administrative reviews, the court held that revocation of parole would violate due process. *See id.* at 872, 874. *But see, e.g.*, Hawkins v. Freeman, 195 F.3d 732, 746 (4th Cir. 1999) (parole commission's revocation of erroneously granted parole 20 months after prisoner's release did not violate due process).

The Supreme Court has also held that when a parole statute does not give rise to a protected liberty interest, the issuance of a parole notice may be revoked without a hearing. *See* Jago v. Van Curen, 454 U.S. 14, 21 (1981) (per curiam); *see, e.g.*, Gilbertson v. Tex. Bd. of Pardons & Paroles, 993 F.2d 74, 75 (5th Cir. 1993) (revocation of tentative parole date permissible because prisoner had no protected interest in date). The Second Circuit has held, however, that a prisoner has a liberty interest in a fixed effective parole date. *See* Green v. McCall, 822 F.2d 284, 290, 293 (2d Cir. 1987) (prisoners whose early effective parole date had been set, but who had not yet been released, had protected liberty interest entitling them to due process hearing before rescission of early release date, whereas inmates who received only presumptive parole release date were not entitled to same procedural protection). The Second Circuit has not extended due process requirements to the delay of a conditional release date. *See* Doe v. Simon, 221 F.3d 137, 139-40 (2d Cir. 2000).

2414. *See* Greenholtz, 442 U.S. at 15-16.

2415. *See* Wolff v. McDonnell, 418 U.S. 539, 563-69 (1974) (detailing due process minimums for disciplinary procedures: (1) advance written notice of charges; (2) written statement of reasons for disciplinary action taken; and (3) opportunity to call witnesses and present evidence if doing so will not

782

35 Geo. L.J. Ann. Rev. Crim. Proc. (2006)

or parole revocation[2416] hearings, require heightened due process protections.[2417] In *California Department of Corrections v. Morales*, the Supreme Court, without explicitly holding that parole guidelines are subject to *ex post facto* constraints, applied *ex post facto* analysis to an alteration in the frequency of parole hearings.[2418] The Court held that amended parole procedures allowing triennial, instead of annual, parole suitability hearings for a certain class of prisoners did not violate the Ex Post Facto Clause because the statute created only a ''speculative and attenuated'' risk of increasing the prisoner's punishment.[2419] In contrast, in *Lynce v. Mathis*, the Supreme Court held that retroactive cancellation of early release credits having the effect of returning the parolee to prison violated the Ex Post Facto Clause because it ''prolonged his imprisonment'' and therefore ''unquestionably disadvantaged'' the parolee.[2420] Nevertheless, unless prisoners are ''unquestionably disadvantaged'' by parole

jeopardize institutional safety).

2416. *See* Morrissey v. Brewer, 408 U.S. 471, 489 (1972) (detailing due process requirements for parole revocation hearing: ''(a) written notice of the claimed violations of parole; (b) disclosure to the parolee of evidence against him; (c) opportunity to be heard in person and to present witnesses and documentary evidence; (d) the right to confront and cross-examine adverse witnesses (unless the hearing officer specifically finds good cause for not allowing confrontation); (e) a 'neutral and detached' hearing body such as a traditional parole board, members of which need not be judicial officers or lawyers; and (f) a written statement by the factfinders as to the evidence relied on and reasons for revoking parole.''). For a further discussion of prisoners' due process rights see SUBSTANTIVE RIGHTS RETAINED BY PRISONERS in Part VI.

2417. The Supreme Court has held that particularizing the due process requirements demands an examination of the precise nature of the government function as well as the private interest affected. *See* Morrissey v. Brewer, 408 U.S. 471, 481 (1972); *See also* Mathews v. Eldridge, 424 U.S. 319, 335 (1976); *see, e.g.*, Luna v. Pico, 356 F.3d 481, 489 (2d Cir. 2004) (due process rights violated when prisoner sentenced to segregated housing unit confinement and recommended for revocation of significant good credit where hearing officers lacked ''some evidence'' to assess credibility of the accusations); Austin v. Wilkinson, 372 F.3d 346, 358 (6th Cir. 2004), (due process rights violated when current procedures for placing prisoners in super-maximum security prison commonly in error, liberty interest great and administrative segregation acted as alternative procedure to protect inmates and staff), *aff'd in part*, 125 S. Ct. 2384 (2005). *But see, e.g.*, McCall v. Pataki, 232 F.3d 321, 323 (2d Cir. 2000) (prisoner has no right to counsel at parole hearing); Montgomery v. Anderson, 262 F.3d 641, 646 (7th Cir. 2001) (due process rights not violated by failure to provide *Miranda* warnings to prisoner interviewed about charges of stalking a guard in preparation for hearing to reduce good time credits); James v. U.S. Parole Comm'n, 159 F.3d 1200, 1205-06 (9th Cir. 1998) (no due process violation when Parole Commission failed to follow internal policies because internal policies and procedures manuals do not create due process rights).

2418. 514 U.S. 499, 508-10 (1995).

2419. *See id*; *see* U.S. CONST. art. I, § 9, cl. 3 (''No bill of attainder or *ex post facto* Law shall be passed.''). An *ex post facto* law is ''a law that applies retroactively, especially in a way that negatively affects a person's rights, as by criminalizing an action that was legal when it was committed.'' BLACK'S LAW DICTIONARY (7th ed. 1999). The Court noted that the amendment simply altered the method to be followed to fix a parole release date and did not alter the substantive standard used for determining suitability for parole. *See* 514 U.S. at 507-08.

2420. 519 U.S. 433, 446-47 (1997). The Supreme Court returned to this issue in *Garner v. Jones*, holding that retroactive application of Georgia's amended parole rule changing the frequency of required parole reconsideration hearings for inmates serving life sentences from every three years to every eight years did not necessarily violate the Ex Post Facto Clause, emphasizing that the States must have ''due flexibility'' in designing their parole procedures. 529 U.S. 244, 252 (2000). While a prisoner may find ''relevant evidence'' from the ''general operation'' of a parole system, in order to establish an *ex post facto* violation, the prisoner must show that ''as applied to his own sentence the law created a significant risk of increasing his punishment.'' *Id.* at 255; *see, e.g.*, Powell v. Ray, 301 F.3d 1200, 1203-04 (10th Cir. 2002) (elimination of preparole release program not violative of Ex Post Facto Clause because determination of whether prisoner would be entitled to prerelease program was wholly discretionary and therefore created only speculative risk that prisoner's term increased); Harris v. Hammonds, 217 F.3d 1346, 1350 (11th Cir. 2000) (remand for district court to determine whether change of parole review from a yearly review to once every 5 years violated *Garner*). *But see, e.g.*, Mickens-Thomas v. Vaughn, 321 F.3d 374, 390-91 (3d Cir. 2003) (application of parole and preparole standards of review instituted after prisoner sentenced for parole violation violative of Ex Post Facto Clause because record indicated denial of prisoner's parole

Case 1:07-cv-01188-RMC    Document 10-2    Filed 01/15/2008    Page 15 of 18

otections.[2417]

ne Court, without
facto constraints,
arole hearings.[2418]
instead of annual,
iolate the Ex Post
ttenuated" risk of
this, the Supreme
ving the effect of
because it "pro-
antaged" the pa-
ntaged" by parole

changes that create a "significant risk" of increased incarceration, parole guidelines probably do not violate the Ex Post Facto Clause.[2421]

*Parole Revocation.* Minimal due process protections apply to parole revocation proceedings for federal and state prisoners.[2422] Although parolees are subject to many restrictions, they enjoy a protected liberty interest in conditional freedom.[2423] That interest in continued liberty is significant enough to fall within the scope of Fourteenth Amendment protection.[2424] Moreover, parolees rely on an implicit promise

---

cess requirements for
(b) disclosure to the
present witnesses and
es (unless the hearing
and detached' hearing
ers or lawyers; and (f)
voking parole."). For
D BY PRISONERS in Part

rements demands an
interest affected. *See*
U.S. 319, 335 (1976);
olated when prisoner
on of significant good
ccusations); Austin v.
urrent procedures for
y interest great and
ff), *aff'd in part*, 125
(prisoner has no right
r. 2001) (due process
ved about charges of
U.S. Parole Comm'n,
Commission failed to
t create due process

t facto Law shall be
i way that negatively
committed." BLACK's
red the method to be
used for determining

in *Garner v. Jones*,
frequency of required
years to every eight
tates must have "due
a prisoner may find
blish an *ex post facto*
d a significant risk of
5-04 (10th Cir. 2002)
use determination of
and therefore created
1346, 1350 (11th Cir.
m a yearly review to
F.3d 374, 390-91 (3d
risoner sentenced for
of prisoner's parole

and preparole entitlement would have been outside established discretionary bounds of old standards). Brown v. Palamateer, 379 F.3d 358, 363-66 (parole board's retroactive application of amended statute postponing inmate's parole release date violative of Ex Post Facto Clause).

2421. *See* Lynce v. Mathis, 519 U.S. 433, 446-47 (1997). *See, e.g.*, Hamm v. Latessa, 72 F.3d 947, 956-59 (1st Cir. 1995) (no *ex post facto* violation when new policy required sentence aggregation for parole eligibility purposes because resultant aggregation not increase of punishment); Barna v. Travis, 239 F.3d 169, 171 (2d Cir. 2001) (no *ex post facto* violation when legislature changed guidelines used by parole board to inform the exercise of board discretion); Royster v. Fauver, 775 F.2d 527, 533-34 (3d Cir. 1985) (no *ex post facto* violation when standards of newly applied parole regulations less restrictive than old regulations because prisoner not prejudiced by application); Warren v. Baskerville, 233 F.3d 204, 207 (4th Cir. 2000) (no *ex post facto* violation in policy change requiring all parole violators to serve entire original sentence regardless of good time credits earned); McCall v. Dretke, 390 F.3d 358, 363-65 (5th Cir. 2004) (no *ex post facto* violation when inmate committed additional crime after statute enacted); Shabazz v. Gabry, 123 F.3d 909, 915 (6th Cir. 1997) (no *ex post facto* violation in amendments to state law postponing initial parole hearing and lengthening interval between subsequent hearings, yet still allowing prisoner independently to petition parole board, because "amendments do not produce a sufficient risk of increasing the measure of punishment attached to the covered crime"); Ellis v. Norris, 232 F.3d 619, 623 (8th Cir. 2000) (no *ex post facto* violation when statute awarding discretionary good-time credits to inmates repealed); Scott v. Baldwin, 225 F.3d 1020, 1023 (9th Cir. 2000) (no *ex post facto* violation by amendment eliminating biennial reviews of dangerous offender status because amendment did not create "significant risk" prisoner would serve longer sentence); Henderson v. Scott, 260 F.3d 1213, 1215 (10th Cir. 2001) (no *ex post facto* violation because statutory change only changed timing of parole consideration hearings after initial hearing and parole board retained discretion to grant subsequent hearings prior to mandated hearing); Gaskins v. Crosby, 371 F.3d 820, 823 (11th Cir. 2004) (no *ex post facto* violation because prisoner voluntarily forfeited good-time credit for parole under new controlled release program). *But see, e.g.*, Mickens-Thomas v. Vaughn, 321 F.3d 374, 390-391 (3d Cir. 2003) (*ex post facto* violation by retroactive application of more restrictive standards for evaluating parole eligibility); Fender v. Thompson, 883 F.2d 303, 307 (4th Cir. 1989) (Ex Post Facto Clause precludes retroactive application of amended parole statute that would make defendant permanently ineligible for parole); Kellogg v. Shoemaker, 46 F.3d 503, 509-10 (6th Cir. 1995) (*ex post facto* violation by retroactive application of regulation that eliminated right to individual hearing when parolee convicted of felony while on parole); Hunter v. Ayers, 336 F.3d 1007, 1011 (9th Cir. 2003) (*ex post facto* violation when change in parole regulation removed prisoner's right to recoup lost good-time credits); Flemming v. Or. Bd. of Parole, 998 F.2d 721, 724-27 (9th Cir. 1993) (*ex post facto* violation by retroactive application of more restrictive regulation used to calculate parole release date); Smith v. Scott, 223 F.3d 1191, 1196 (10th Cir. 2000) (*ex post facto* violation by retroactive application of amendment removing earned time credits because it was substantive change that was not foreseeable).

2422. *See* Morrissey v. Brewer, 408 U.S. 471, 482 (1972). Several circuits have held that due process protection also applies to supervised release revocation proceedings. For a further discussion of supervised release see SUPERVISED RELEASE AND RESTITUTION in this Part.

The Ninth Circuit has held that the Americans with Disabilities Act requires that parole policies and practices must accommodate inmates with disabilities to ensure due process. *See* Armstrong v. Davis, 275 F.3d 849, 863-64 (9th Cir. 2001).

2423. *See* Morrissey, 408 U.S. at 482 (parolee's liberty interest is conditioned on observance of parole conditions, termination of parole inflicts grievous loss and deserves due process protection); *see, e.g.*, Felce v. Fiedler, 974 F.2d 1484, 1485-86 (7th Cir. 1992) (parolee had liberty interest in parole without involuntary administration of antipsychotic drugs and was entitled by due process to neutral procedure determining whether drugs necessary); Belk v. Purkett, 15 F.3d 803, 812 (8th Cir. 1994) (parolee had liberty interest that could not be taken away without allowing him to contact witnesses, cross-examine adverse witnesses and review evidence against him). The Seventh Circuit extends greater due process protection to parolees threatened with rescission than to first-time parole seekers. *See* Newbury v. Prisoner Review Bd., 791 F.2d 81, 85 (7th Cir. 1986).

2424. *See* Morrissey, 408 U.S. at 481-82.



35 GEO. L.J. ANN. REV. CRIM. PROC. (2006)

that their parole will be revoked only if they violate their parole conditions.[2425] Therefore, due process requires that parole be revoked only through a procedure designed to ensure that the finding of a violation is factually correct and that the discretionary decision to recommit the parolee to prison is based on an accurate assessment of the parolee's behavior.[2426]

Due process requirements apply to each of the two stages in a typical parole revocation proceeding.[2427] First, shortly after a parolee is arrested for a parole violation, a preliminary hearing must be held to determine whether probable cause exists to believe that the parolee violated parole conditions.[2428] The parolee is entitled to appear and present evidence at this preliminary hearing,[2429] and to confront and cross-examine adverse witnesses unless the hearing officer determines that the witness may be harmed if his or her identity were disclosed.[2430] If the hearing officer determines that probable cause exists to hold the parolee pending a final revocation decision, the officer must summarize the proceedings and state the reasons and evidence supporting the probable cause finding.[2431] If the parolee has been convicted of a crime while on parole, however, no preliminary hearing is required because the conviction itself establishes probable cause to believe that there has been a parole violation.[2432]

In the second stage, once probable cause has been established and if the parolee desires, the parole authority must hold a revocation hearing[2433] within a reasonable time after the parolee has been taken into custody.[2434] The revocation authority must

---

2425. *See id.* at 482.

2426. *See id.* at 484.

2427. *See id.* at 485, 489.

2428. *See id.* at 486-87. In *Morrissey,* the Court announced that the hearing officer cannot have any connection with the case and that the parolee must receive notice of the alleged violations and the hearing's purpose. *See id. But see, e.g.,* U.S. v. Sanchez, 225 F.3d 172, 175 (2d Cir. 2000) (due process not violated by 4-year delay between violation and notice of hearing concerning violation); Malave v. Hedrick, 271 F.3d 1139, 1140-41 (8th Cir. 2001) (per curiam) (due process not violated when execution of parole-violator warrant postponed until end of sentence for crimes committed during parole).

2429. *See Morrissey,* 408 U.S. at 487; *see, e.g.,* John v. U.S. Parole Comm'n, 122 F.3d 1278, 1283-84 (9th Cir. 1997) (due process violated by regulation prohibiting defendant from calling adverse witnesses for institutional parole revocation hearing because regulation did not require specific findings of good cause for denying right).

2430. *See Morrissey,* 408 U.S. at 487; *see, e.g.,* U.S. v. Martin, 382 F.3d 840, 846 (8th Cir. 2004) (due process not violated by failure to allow inmate to confront witness against him because government showed good cause for not presenting witness); Maddox v. Elzie, 238 F.3d 437, 443-45 (D.C. Cir. 2001) (parolee's right to confront witnesses not prejudiced though parole board inappropriately met *ex parte* with trial prosecutor because parolee had opportunity to present his case at hearing, was represented by counsel, and counsel did not object to *ex parte* meeting).

2431. *See Morrissey,* 408 U.S. at 487.

2432. *See* Moody v. Daggett, 429 U.S. 78, 86 n.7 (1976); *see, e.g.,* Kellogg v. Shoemaker, 46 F.3d 503, 508-09 (6th Cir. 1995) (parole revocation can be handled administratively, without preliminary hearing, when parolee convicted of crime committed while on parole); Doyle v. Elsea, 658 F.2d 512, 516 (7th Cir. 1981) (per curiam) (preliminary hearing not required because defendant accused of, and in custody for, crime committed while on parole, though not convicted); John v. U.S. Parole Comm'n, 122 F.3d 1278, 1281 (9th Cir. 1997) (preliminary hearing not constitutionally required because defendant convicted of new rape).

2433. *See Morrissey,* 408 U.S. at 487-88; *see, e.g.,* DeWitt v. Ventetoulo, 6 F.3d 32, 36-37 (1st Cir. 1993) (parolee's due process rights violated when returned to prison without parole revocation hearing after court order suspending part of life sentence vacated 6 years later without any official determination of wrongdoing); Vershish v. U.S. Parole Comm'n, 405 F.3d 385, 390 (6th Cir. 2005) (parolee's due process rights violated when not granted hearing pursuant to his arrest for parole violation); U.S. v. Cornog, 945 F.2d 1504, 1513 (11th Cir. 1991) (parolee entitled to final hearing because, under state law, parole not automatically revoked when parolee committed new crime).

2434. *See* 28 C.F.R. §§ 2.47(a)(1), 2.49(f) (2005); *see also Morrissey,* 408 U.S. at 488 (2-month delay not necessarily unreasonable); *see, e.g.,* Villarreal v. U.S. Parole Comm'n, 985 F.2d 835, 837-38 (5th Cir.

give the parolee notice of the alleged parole violation before the actual hearing.[2435] The decision to revoke parole must be based upon a retrospective factual inquiry into whether the parolee has violated the conditions of his or her release,[2436] and an assessment of whether the parolee should be recommitted to prison or made subject to additional parole conditions aimed at protecting society and improving his or her chances of rehabilitation.[2437] At the hearing, evidence against the parolee must be disclosed and the parolee must be allowed to present witnesses and documentary evidence.[2438] The parolee must also be allowed to cross-examine witnesses unless the hearing officer specifically finds good cause for preventing such confrontations.[2439] Furthermore, the parolee may show either that the violation did not occur or that mitigating circumstances should preclude revocation.[2440] A "neutral and detached" body, such as the parole board, must make the revocation decision and issue a written statement of the evidence and the reasons supporting revocation of parole.[2441] Due

---

1993) (64-day delay not unreasonable though parolee allegedly lost contact with 3 witnesses because matters about which witnesses would testify already known or not denied); Hanahan v. Luther, 693 F.2d 629, 634-35 (7th Cir. 1982) (8-month delay not necessarily unreasonable); Benny v. U.S. Parole Comm'n, 295 F.3d 977, 986 (9th Cir. 2002) (no due process violation from 31-day delay in preliminary interview when parolee did not suffer prejudice). *But see, e.g.*, Barnard v. Henman, 89 F.3d 373, 377 (7th Cir. 1996) (invalid execution of parole-violator warrant did not trigger 90-day procedural requirement for hearing).

2435. *See Morrissey*, 408 U.S. at 489; *see, e.g.*, U.S. v. Havier, 155 F.3d 1090, 1093 (9th Cir. 1998) (notice inadequate because violation notice "alluded only to 'another federal, state, or local crime' that had been committed," without stating specific statute under which government intended to charge parolee). *But see, e.g.*, D'Amato v. U.S. Parole Comm'n, 837 F.2d 72, 77-78 (2d Cir. 1988) (notice adequate, notice of charges to be considered at parole revocation hearing not given, because notice given of charges to be considered at initial parole hearing and same offenses basis for both hearings); Jones v. Moore, 986 F.2d 251, 253 (8th Cir. 1993) (per curiam) (notice adequate because parolee provided with written notice of claimed violations and informed that incident reports constituted evidence of violations); Zitto v. Crabtree, 185 F.3d 930, 932 (9th Cir. 1999) (per curiam) (oral notice adequate when parolee was told DUI conviction would be used as basis for forfeiting street time because parolee had opportunity to receive a continuance of hearing).

2436. *See Morrissey*, 408 U.S. at 479; *see, e.g.*, Monroe v. Thigpen, 932 F.2d 1437, 1442 (11th Cir. 1991) (due process violated because board relied on admittedly false information when denying parole).

2437. *See Morrissey*, 408 U.S. at 479-80.

2438. *See id.* at 489; *see, e.g.*, Belk v. Purkett, 15 F.3d 803, 812 (8th Cir. 1994) (evidence not disclosed when parolee only given synopsis of evidence that included much of evidence on which revocation decision rested).

2439. *See Morrissey*, 408 U.S. at 489; *see, e.g.*, Williams v. Johnson, 171 F.3d 300, 307 (5th Cir. 1999) (no violation of parolee's due process rights when parole officer's affidavit used as evidence in hearing, though parolee denied chance to confront and cross-examine absent parole officer, because hearing officer's error in not producing parole officer did not have "substantial and injurious effect . . . in determining . . . outcome"); Country v. Bartee, 808 F.2d 686, 687 (8th Cir. 1987) (per curiam) (right to confront and cross-examine adverse witnesses not absolute because revocation hearing not part of criminal prosecution); Kell v. U.S. Parole Comm'n, 26 F.3d 1016, 1020 (10th Cir. 1994) (right to confront adverse witness not absolute, so conventional substitutes for live testimony may be used where appropriate); Maddox v. Elzie, 238 F.3d 437, 444 (D.C. Cir. 2001) (due process rights not violated by *ex parte* meeting between board member and prosecutor prior to hearing).

The circuits are split as to whether the Fifth Amendment requires that use immunity be granted to a parolee involved in a revocation hearing prior to the resolution of criminal charges against the parolee. *Compare* Flint v. Mullen, 499 F.2d 100, 103 (1st Cir. 1974) (per curiam) (5th Amendment not implicated because no compulsion in revocation hearing when other evidence sufficient to establish violation), Lynott v. Story, 929 F.2d 228, 230 (6th Cir. 1991) (same), U.S. v. Brugger, 549 F.2d 2, 4 (7th Cir. 1977) (same), *and* Ryan v. Mont., 580 F.2d 988, 991 (9th Cir. 1978) (same), *with* Melson v. Sard, 402 F.2d 653, 655 (D.C. Cir. 1968) (per curiam) (use immunity required when parole revocation hearing held prior to resolution of criminal charges against parolee).

2440. *See Morrissey*, 408 U.S. at 488.

2441. *See id.* at 489; *see, e.g.*, U.S. v. Sesma-Hernandez, 253 F.3d 403, 409 (9th Cir. 2001) (record should reflect district court's consideration of disputed charges but not specific findings about undisputed charges or evidence); Duckett v. Quick, 282 F.3d 844, 848 (D.C. Cir. 2002) (parole revocation valid parole board did not discuss each listed factor in revocation regulation).

35 GEO. L.J. ANN. REV. CRIM. PROC. (2006)

process does not require appointment of counsel for indigent parolees in revocation hearings.[2442]

---

2442. *See* Gagnon v. Scarpelli, 411 U.S. 778, 790 (1973). In *Scarpelli*, the Court held that the parole agency must be allowed considerable discretion in its decision whether to appoint counsel though counsel should be provided when the parolee requests it and has a timely and colorable claim that he or she did not commit the violation or that substantial reasons justify or mitigate the violation. *See id; see, e.g.,* Lynott v. Story, 929 F.2d 228, 232 (6th Cir. 1991) (no 6th Amendment violation because defendant could not identify any exculpatory evidence that would have been offered except for alleged lack of sufficient contact with attorney and failure to call favorable witnesses). The agency also should consider, especially in doubtful cases, whether parolee appears to be capable of speaking effectively *pro se. See Scarpelli,* 411 U.S. at 790-91. If the agency refuses the request for counsel, it should succinctly state the grounds for refusal in the record. *See id.* at 791.

*Ex. (b)(2)*

Department of Mental Health
AUTHORIZATION FOR DISCLOSURE
(District of Columbia Mental Health Information Act)

I, _Larry Ford_, hereby request that the following information,
(Please print your name)

_____, be disclosed by my physician or other mental health

professional or provider (Provider) to:

_____. In
(Please print the name of the person or organization receiving the information)

authorizing this disclosure of mental health information, I understand that the information will be used for

the purpose of _____, both now and in the future.

This authorization permits the release of information that is in existence today. I understand that I may

Permit the Provider to release information that it obtains after the date of this authorization for a period of

up to 60 calendar days. If I don not state below when this authorization expires, then it will expire 60

calendar days from the date that I signed this form. If I don not want to authorize release of information not

in existence today, I will indicated below. I understand that this information cannot be disclosed by the

person or organization who received it without my authorization and that the law requires this notice:

**The unauthorized disclosure of mental health information violates**
**The provisions of the District of Columbia Mental Health Information Act of 1978.**
**Disclosures may only be made pursuant to a valid authorization by the client, or as**
**provided in titles III or IV of that Act. The Act provides for civil damages and criminal**
**penalties for violations.**

This consent is subject to revocation in writing at any time.

☐ Authorization for release of additional information expires on _____ (date)
                                                                         *(cannot exceed 60 calendar days from date of signature)*
☐ I DO NOT authorize release of information **not** already in existence today.

_____        _____
              (Signature)                                      (Date)

_____        _2/22/0?_
              (Witness)                                      (Date)

Copies to: (1) Client or person authorizing disclosure; (2) Client's record of mental health
Information; (3) Accompany disclosed information.

DMH-969 (Rev. 11/01)

**Court Services and Offender Supervision Agency
for the District of Columbia**
Community Supervision Services

## CONSENT FOR THE RELEASE OF SENSITIVE OFFENDER INFORMATION:
## MENTAL HEALTH AND SEX OFFENDER TREATMENT

I, _Larry Epps_ hereby consent to communication
_____(name of offender)_____

between _____ and
_____(treatment program)_____

the Court Services and Offender Supervision Agency for the District of Columbia regarding the

following information: _diagnosis, recommendations_
_____(nature of the information—as limited as possible)_____

The purpose of and need for the disclosure is to inform the criminal justice agency listed above my attendance and progress in treatment. The information to be disclosed is limited to my diagnosis, my attendance or lack of attendance at treatment sessions, my cooperation with the treatment program, prognosis, and:

_to assist with supervision._

I understand that this consent may be revoked by me except in connection with a life or health insurance policy under §6-2013(a)(3):

I understand that I have the right to examine and review my mental health records. I understand that a copy of this waiver will be provided to me as well as the individual responsible for making the actual disclosure(s). I also understand that a copy of this waiver will be placed in my file. I further understand that this release pertains only to the information contained in my treatment file on the date this release is signed. I also understand that the law requires this notice.

The unauthorized disclosure of mental health information violates the provisions of the District of Columbia Mental Health Information Act of 1978 (§6-2001—6-2062). Disclosures may only be made pursuant to a valid authorization by the client or as provided in Titles III or IV of that Act. The Act provides for civil damages and criminal penalties for violations.

X _____          _____
Signature of Offender/Date Signed          Witnessed By/Date Signed

_10/13/55_
Offender's Date of Birth

_188-413_
Offender's DCDC Number

_304-430_
Offender's PDID Number

Court Services and Offender Supervision Agency

Page 2

Please explain in detail any pertinent reasons for referral that would be helpful in completing the needed psychological screener:

Mr. Epps reports to supervision as directed. Mr. Epps on occasion appears aggiated and angry. The offender has expressed that he has been unjustly placed in the criminal justice system. He reports that he has a pending court matter to address his concerns. This officer has observed that when he is confronted with negative things that he is doing in the community i.e. using drugs he is angered because he feels that he is not suppose to be under supervision. Although at times this officer has to allow the offender to vent on occasions, he has been compliant with all requests.

The offender relapsed in October 2006, after the passing of his father. He has not dealt with his grief. He feels as though his family is against him. It is believed that the offender would benefit from individual grief counseling.



**Court Services and Offender Supervision Agency**
**for the District of Columbia**
*Community Supervision Services*
*Special Supervision Branch*

### REQUEST FOR PSYCHOLOGICAL EVALUATION
To be completed by referring Officer
*Attach PSI, Psychological, Mental Health information, Judgment and Commitment Order and/or
Certificate of Parole

Date of Referral Request: February 26, 2007

| | | | |
|---|---|---|---|
| Larry Epps<br>Defendant Name: | 10/13/55<br>DOB: | 304-430<br>PDID#: | 188-413<br>DCDC#: |
| 113 Willmington Place SE Apt 303 Washington DC<br>Address: | | 202-561-0115<br>Telephone: | |
| CSO Name: Emesha James<br>Department Name and Address: | CSO Telephone: 202-585-7804        Fax: 202-585-7829 | | |
| Gender:   ☒Male         ☐Female | Race: ☒Black   ☐Asian   ☐White<br>                  ☐Hispanic ☐Other: | | |
| Children: ☐ Yes  ☒No   number of children: | Marital Status: ☒Single    ☐Married    ☐Divorced | | |
| Highest Level of Education: GED | Criminal Case #:  F-9286-88 | | |
| Current Charge(s): Robbery | Date Committed:1989 | By (Specify Court): Superior<br>Court | |
| Date Sentenced: 5/8/89 | Parole Eligibility Date:  10-8-05 | | |
| Defendant Status:  ☐Jail ☐Bail  ☐Adult ☐Work Release | ☐Youth ☐Detention | | ☐Probation ☒Parole |
| Date of Termination/Expiration:  Life | Prior Charges:  Please see pre-sentence report | | |

Check all that apply to reason for referral:

☐ Court ordered treatment/evaluation          ☒Questionable Behavior and or Mood
☐ Noncompliance with Supervision              ☐ Self Referral
☐ History of Mental Illness                   ☐ Medication Issues
☐ Altered Mental Status                       ☒ Supervision Placement
☐ Suicidal/Homicidal Behavior                 ☐ Other:

*300 Indiana Ave. NW Rm. 2148, Washington, DC  20001*
*Voice:  (202) 585-7383*



**Court Services and Offender Supervision Agency
for the District of Columbia**

*Community Supervision Services*
*Special Supervision Branch*

### Psychological Evaluation Checklist

Please ensure that the following documents accompany the request for psychological evaluation referral packet.

Yes  No
- [x] [ ] Pre-Sentence Investigation Report (PSI) if available
- [x] [ ] Copy of Judgment and Commitment Order if available
- [x] [ ] Any prior psychological evaluations if available
- [ ] [x] Any substance abuse evaluations if available (pending was assessed 2/26/07)
- [x] [ ] Most recent urine checks
- [x] [ ] Running record notes related to mental health status
- [ ] [x] Police reports if available
- [x] [ ] Signed releases of information

**Offender's available dates/times:** _____

**Offender's contact telephone number:** _____

---

*300 Indiana Ave, NW, Room 2148   Washington, DC 20001*
*Voice: (202) 585-7383*



**Court Services and Offender Supervision Agency**
**for the District of Columbia**
*Community Supervision Services*
*Substance Abuse and Treatment Branch*

## PSYCHIATRIC SCREENING

**DATE:** 4/3/07

| NAME | AGE | CHARGE | STATUS | CSO NAME | PDID # |
|------|-----|--------|--------|----------|--------|
| Epps, Larry | 51 | Murder II | Parole | James, Emesha | 304-430 |

**REASON FOR REFERRAL:**

☐ Court ordered Treatment/Evaluation
☐ Noncompliance with Supervision
☐ History of Mental Illness
☐ Medication Issues
☒ Questionable Behavior and/or Mood

☐ Self Referral
☒ Supervision Placement
☐ USPC Ordered
☐ Altered Mental Status
☐ Other:

**RESPONDENT HAS HISTORY OF THE FOLLOWING:**

☐ appetite change
☐ threatening
☐ suicide attempts
☐ obsession/compulsions
☐ wandering
☐ auditory hallucinations
☐ visual hallucinations

☐ weight change
☐ poor impulse control
☐ reckless
☐ psychomotor agitation/retardation
☐ confusion
☐ psychiatric hospitalizations
☐ pharmacotherapy

☐ somatization
☐ noncompliance
☐ sexually aggressive
☐ tearful episodes
☐ paranoia
☐ mood swings
☐ brain trauma

☐ panic attacks
☐ suicidal thinking
☐ sleep disturbance
☐ bizarre behaviors
☐ clinical depression
☒ hyperactivity
☒ substance usage

**BRIEF HISTORY:**
**FAMILY:**
☐ Intact          ☐ Foster          ☒ Mother Only          ☐ Placement          ☐ None at Present
**EDUCATION:**
☐ Dropped out of:     ☐ HS Diploma          ☒ GED     ☐ College     ☐ Skill/Craft:
**CRIMINAL HISTORY:**
☐ None               ☐ Juvenile:          ☐ Adult
**SUBSTANCE ABUSE HISTORY:**
☐ None   ☐ Alcohol   No of Years          ☒ Other Substances: cocaine          No of Years
**HISTORY OF MENTAL ILLNESS:**
Prior contact with Mental Health:
☒ Early Childhood   ☐ Juvenile          ☐ Adult          ☐ Hospitalizations     Length:
**HISTORY OF PHYSICAL ILLNESS:**
**PRESENT STATUS:**
☒ Never Married   ☐ Married   ☐ Divorced   ☐ Widowed          ☐ Children #          ☐ Other:
**LIVING CONDITIONS:**
☐ Shelter          ☐ Half Way House          ☒ Independent          ☐ With Family :
**CURRENT MEDICATIONS:**
☒ None
☐ Antidepressant:          ☐ Antipsychotic:          ☐ Mood Stabilizer:
                           ☐ Seizure Medication:      ☐ Other:
**PRIOR MEDICATIONS:** none

*300 Indiana Ave NW Room 2148   Washington, DC 20001*
*Voice: (202) 585-7383 Fax: (202) 585-7506*

Court Services and Offender Supervision Agency

## MENTAL STATUS:

**Attitude:**
- ☒ cooperative
- ☐ appropriate
- ☐ guarded/evasive

- ☐ uncooperative
- ☐ hostile
- ☐ inattentive

- ☒ defensive
- ☐ blaming
- ☐ other:

**Self Concept:**
- ☐ positive/intact
- ☐ hopeless

- ☐ depersonalized
- ☒ grandiose

- ☐ self deprecating
- ☐ helpless

**Appearance:**
- ☒ appropriately dressed
- ☒ appropriately groomed

- ☐ poorly dressed
- ☐ poorly groomed

- ☐ disheveled
- ☐ body odor

**Consciousness:**
- ☒ alert
- ☐ lethargic
- ☐ clouded

- ☐ unresponsive
- ☐ hyper-alert
- ☐ other:

- ☐ concentration problems
- ☐ attention problems

**Orientation:**
- ☒ person
- ☒ situation

- ☒ place

- ☒ time

**Speech:**
- ☐ regular
- ☐ incoherent
- ☐ loose associations
- ☐ circumstantial

- ☐ tangential
- ☐ poverty
- ☐ soft
- ☐ slow

- ☐ mute
- ☐ loud
- ☒ pressured
- ☐ word salad

**Mood:**
- ☐ euthymic
- ☐ depressed
- ☐ sad
- ☐ anxious

- ☒ angry
- ☐ irritable
- ☐ elated
- ☐ labile

- ☐ calm
- ☐ apathetic
- ☐ guilty
- ☐ grieving

**Affect:**
- ☐ congruent to content
- ☐ blunted
- ☐ flat

- ☒ expansive
- ☐ inappropriate
- ☐ teary

- ☐ flashbacks
- ☐ labile
- ☐ irritable

**Thought Content:**
- ☒ goal directed
- ☐ disorganized
- ☐ delusional
- ☐ persecution
- ☐ tangential
- ☐ circumstantial

- ☐ ideas of reference
- ☐ phobias
- ☐ thought insertion
- ☐ broadcasting
- ☐ loose associations
- ☐ self-depreciation

- ☐ obsessions
- ☐ compulsions
- ☐ worthlessness
- ☐ perseveration
- ☐ racing

**Memory:**
- ☒ WNL

- ☐ ST impaired

- ☐ LT impaired

**Dangerousness:**
- ☐ violent behavior
- ☐ suicidal ideation
- ☐ suicidal plan
- ☒ past homicidal act(s)

- ☒ not suicidal
- ☐ homicidal ideation
- ☐ homicidal plan

- ☒ not homicidal
- ☐ history of assaultive behavior
- ☐ past suicidal act(s)

**Hallucinations:**
- ☐ auditory

- ☐ visual

- ☐ command

**Insight:**
- ☐ excellent
- ☐ good
- ☒ fair
- ☐ poor
- ☐ grossly impaired

**Judgment:**
- ☐ excellent
- ☐ good
- ☐ fair
- ☒ poor
- ☐ grossly impaired

**Cognition:**
- ☒ no gross cognitive deficits
- ☐ concentration problems
- ☐ concrete

**Psychomotor Activity:**
- ☐ normal

- ☒ restless

- ☐ retardation

Court Services and Offender Supervision Agency

Page 3

**RECOMMENDATIONS:**

**Type of Supervision:**
- ☒ General Supervision
- ☐ Domestic Violence Supervision
- ☐ Mental Health Supervision
- ☐ HIDTA Supervision
- ☐ Sex Offender Supervision

**Follow up Treatment:**
- ☒ Individual therapy/counseling
- ☐ Family Therapy
- ☐ Other:
- ☒ Medication Follow-Up
- ☐ Anger Management
- ☐ Group Therapy
- ☐ Refer To:

**Refer for More in Depth Evaluation:**
- ☐ Full Psychological
- ☐ Psychoeducational
- ☐ Risk Assessment
- ☐ Physical
- ☐ Neuropsychological
- ☐ Other:

**COMMENTS:** (issues relevant to supervision not covered in the screener).

Mr. Epps , a 51-year old single male is presently diagnosed with multiple medical problems but has not as of today been under the care of a particular physician. He seems to have become obsessed with the injustice done to him and with his present criminal status.

As described in his comprehensive prerelease report (included in the package, Mr. Epps has personality problems but not a co-occurring mental illness that needs a placement in MH supervision. He is a difficult person to supervise because of the criminogenic characteristics that he presents. He is also Narcissistic thus not easily open to redirecting or counseling easily. In addition o the personality problems he is truly traumatized by his extensive incarceration and what he perceives as injustice done upon him whether that is accurate or not.

**RATIONALE FOR TRANSFER FROM OR TO SPECIAL SUPERVISION:**

As mentioned above there is no rationale for transfer to MH.

**RECOMMENDATIONS:**

1. Mr. Epps needs to report to a clinic for medical f/u. He was referred to the Congress Heights Unity Health clinic. The number to the clinic was given to him as by the time this referral was being organized the clinic had closed therefore no appointment was done while he was at 300 Indiana.
2. Mr. Epps was open for the idea of asking for a psychiatric consult while at the Unity health to help him deal more appropriately with the anger.
3. CSO can reduce the anger by acknowledging the injustice even if she does not agree with him. He should also be directed to pursue the matter through appropriate channels. The CSO could further strengthen her relationship for supervision by redirecting him into focusing on his medical health and also encourage him to see the psychiatrist at Unity where e he will also be treated for his medical problems.
4. Please reschedule with me in two months to f/u on hi appointments and to reassess for additional needs.

**DIAGNOSTIC IMPRESSION:**
Axis I Cocaine Dependence
   Adjustment Disorder with Depressed Mood
Axis II Antisocial Personality Disorder
Axis III Diabetes; HIV+;Hepatitis C;Diabetes;High Cholesterol
Axis IV legal, lack of support, lack of adequate income
Axis V 45

Consultant Name/Title/Signature:
**Nuha Abudabbeh, PhD**

Ex (2)(2)

# OxyContin Makers Admit Deception

## Addiction Danger From Painkiller Was Understated

By Carrie Johnson
Washington Post Staff Writer

The manufacturer of the potent painkiller OxyContin and three current and former executives in the criminal case today pleaded guilty to criminal marketing, the drug's maker acknowledged in an admission that helped drive its addictive properties that led to scores of people becoming addicted, prosecutors said.

The Purdue Pharma LP and its chief executive today will pay a total of $635 million to resolve charges filed by the U.S. attorney in the Western District of Virginia, who called OxyContin "one of our nation's greatest prescription-drug failures."

"Even in the face of warnings from health-care professionals, the media and members of its own sales force," Purdue continued to push a fraudulent marketing campaign, U.S. Attorney John L. Brownlee said.

The company knew as early as 1995 that health professionals feared the addictive potential of OxyContin, but in internal marketing materials that described the drug as "less addictive" even through 2001, Purdue claimed that the "miracle" treatment...

...supervises the difficult OxyContin withdrawal out of fear that it would add to the "current negative press," according to documents presented in an Abingdon, Va., courtroom yesterday.

Purdue put its desire to sell

See OXYCONTIN, A9, Col. 1

---

## THE WASHINGTON POST.

# OxyContin Makers to Pay $635 Million

OXYCONTIN, From A1

OxyContin above the interests of the public," Assistant U.S. Attorney General Peter D. Keisler...

OxyContin, a brand name for oxycodone, is a time-release pill that, when crushed and inhaled, gives users a powerful high. The medication was designed as a less dangerous alternative to other pain medications...

In a 2003 report, the Drug Enforcement Administration linked 146 deaths to OxyContin overdose and another 318 possibly related to the medication. The DEA said the number of deaths related to the substance rose 400 percent from 1996 to 2002.

Under the terms of the plea deal, Purdue pleaded guilty to a single felony count and agreed to pay $470 million to the government and $130 million more to settle civil actions over injuries and deaths. Virginia will receive nearly $5 million for its health-care fraud control fund and $1 million for its prescription drug monitoring program.

Purdue chief executive Michael Friedman, chief lawyer Howard R. Udell and former chief of research Paul D. Goldenheim each pleaded guilty to a misdemeanor charge. Though they will not serve any time, together will pay about $35 million under the terms of the agreement. Friedman and Udell remain with the company, based in Stamford, Conn., while Goldenheim works as a health-care startup businessman.

In a statement, Purdue distanced the executives from the fraudulent marketing messages disseminated to thousands of physicians and pharmacies over the past decade. The company said that the men admitted guilt under a legal principle that holds high-level officials accountable for the improper acts of others...

---

...drug companies...to deceive consumers...burden for...one health...

Senator...Pain...Group...that...

Purdue...

Since...consumers...New York...lican lawmaker Randolph...case brought by Brownlee well & Goldenheim...ment...dozen state and federal...agreement in principle...the case in October...volved...

...OxyContin...this year...exandria...doctor...convicted...charged...

Having...growing...who was...Minister...count...cuton...prescribed...oxycodone...narcotics...more than 1,600...and others...sold the medication...black...

The...investigation...doctors, pharmacists and patients suspected of selling potent narcotics and fueling an epidemic that ravaged Appalachia and triggered other crimes.

Staff writer Jerry Markon contributed to this report.

THE
**PUBLIC**
**DEFENDER**
**SERVICE**
*for the District of Columbia*

Mona Asiner
*Staff Attorney*

633 Indiana Ave., N.W.
Washington, D.C. 20004
800.341.2582    202.628.1200
Direct: 202.824.2417
Fax: 202.824.2157
Email: masiner@pdsdc.org

5/10/07

Mr. Larry D. Epps 188413
DC JAIL
1901 D SE
Washington, DC 20002

Dear Mr. Epps,

...Just a short note to provide you with copies of your paperwork in your pending gun case. I do not plan on advising the USPC of this matter. Should you want them to be aware of it, please let me know. You should note that your CSO may, on his or her own, do a routine check. I am only providing you with a copy of the court file in that matter in the event that (a) you don't already have it (b) so you know what is in the public record.

As you know, our investigators has visited with your significant other and she confirmed your diabetic blackouts. The issue to keep in mind is how will you respond, if asked by USPC, why you and/or someone else didn't just call to say that you had a blackout and as such, could not have kept appointment.

Take care.

Sincerely,

Mona Asiner
Staff Attorney

| U.S. DEPARTMENT OF JUSTICE | WARRANT APPLICATION |
|---|---|
| UNITED STATES PAROLE COMMISSION | D.C. Code Offender |

Name .............................. Epps, Larry

Reg. No. .......................... 36966-118

DCDC No. ...................... 188-413

FBI No .............................. 278412M4

Birth Date ....................... October 13, 1955

Race ............................... Black

Date .......................................... **April 4, 2007**

Termination of Supervision ..... **LIFE**

[If Conviction Offense Before April 11, 1987 And Offender Is On Mandatory Release, Termination Date Is 180 Days Prior To Full Term]

Violation Date .......................... December 15, 2005

Released ................................. October 7, 2005

Sentence Length ............ LIFE

Original Offense ............ Second Degree Murder

**The subject should receive credit towards his re-parole guidelines from 9-8-06 thru 11-20-06 for time spent in custody on warrant dated 8-25-06.**

If you have been arrested on a violator warrant in the District of Columbia and you have not been convicted of a new offense, you shall be given a probable cause hearing within five days of your arrest and violator warrant. Probable cause hearings are normally scheduled on Tuesdays and Fridays at the Central Detention Facility. The purpose of the probable cause hearing is to determine if there is probable cause to believe that you have violated the conditions of your release, and if so, whether to release you or hold you for a revocation hearing. If no probable cause is found, you will be released and either reinstated to supervision, or discharged from further supervision if your sentence has expired.

At your probable cause hearing and any subsequent revocation hearing you will be apprised of the information supporting the violation charges. You may present documentary evidence and voluntary witnesses on your behalf. If you deny the charge(s) against you, you may request the presence of those persons who have given information upon which the charges are based. Such adverse witnesses will be made available for questioning unless good cause is found for their non-appearance.

You may be represented by an attorney or, if you are unable to pay for such representation, an attorney will be appointed for you if you fill out and promptly return a request for representation to the hearing examiner.

If, after a revocation hearing, you are found to have violated the conditions of your release the Commission may: (1) restore you to supervision, and, if appropriate, (a) reprimand you; (b) modify your conditions of supervision; or (c) refer you to a residential community treatment center for the remainder of your sentence; or (2) revoke your parole, mandatory release, or supervised release in which case the Commission will also decide when to consider you for further release.

If the Commission revokes your parole, mandatory release, or supervised release you will not receive credit toward service of your sentence for time spent on parole/mandatory release/supervised release.

## CHARGES:

**Charge No. 1 - Failure to Submit to Drug Testing**. The releasee failed to submit urine specimens on 9-11, 9-18-06, 1-5, 2-9 and 3-16-07. This charge is based on the information contained in the violation report dated 2-6 and 3-27-07 from supervising Officer Emesha James.

I ADMIT [   ] or DENY [   ] this charge.

---

Epps, Larry
Reg. No. 36966-118    DCDC No. 188-413

**Charge No. 2 - Use of Dangerous and Habit Forming Drugs.** The releasee submitted urine specimens which tested positive for:

Cocaine and Opiates on 2-5-07

Cocaine on 2-16, 3-2 and 3-9-07

This charge is based on the information contained in the violation report dated 2-6 and 3-27-07 from supervising officer Emesha James and corresponding drug report dated 3-20-07
I ADMIT [   ] or DENY [   ] this charge.

**Charge No. 3 - Law Violation. A) Misuse of Temporary Tags; B) Possession of Drug Paraphernalia; C) Unregistered Vehicle.** On 2-4-07, the releasee was operating a vehicle which had tags that were registered to another vehicle. During the search incident to arrest, an officer recovered a syringe from the releasee's pants pocket. In addition a makeshift pipe made from a plastic bottle was located where the releasee was seated.   The releasee was arrested by the Metropolitan Police Department for the above-cited offense on 2-4-07. This charge is based on the information contained in the violation report dated  2-6-07 from supervising officer  Emesha James and a police report dated 2-4-07.   Status of Custody/Criminal Proceedings:  The subject was released on 2-12-07.  A status hearing is scheduled for charges (A) and (C) on 4-9-07.  A non-jury trial is scheduled for charge (B) on 5-14-07
I ADMIT [   ] or DENY [   ] this charge.

**Probable Cause Hearing Is  Required**                    **Warrant Recommended By:**

                                                                         *Rhonda A. Shelton*

Warrant Issued.................. April 4, 2007              **Rhonda A. Shelton, Case Analyst**
                                                                         **U.S. Parole Commission**

Community Supervision Office Requesting Warrant:  General Supervision Unit IX-Team 53, 1418 Good Hope Road

Ex. (a)(1)



product you are looking for.
Advanced Search



TESTIMONIALS »

I am extremely pleased to
tell you that I received my
order in only five days.
Thanks to ...
Read more...
E. Burke (USA)

ADD TO FAVORITES

Bookmark Natural Coca Tea
Delisse

INFORMATION

Downloadable catalog
Whosales
Peruvian Manufacturers
Wholesale Inquiries
Our Company
F.A.Q.
Shipping & Returns
Privacy Notice
Conditions of Use
Contact Us
Site Map

Tuesday 26 June, 2007

CURRENCIES

US Dollar

4136897 requests since Saturday 01 March, 2003

Thinking about Peru

Copyright © 2001-2006 Compras Perú
compras@comprasperu.com

11/01/2007  09:51   2024424286            RECORDS CELLBLOCK              PAGE  02/02

# SUPERIOR COURT OF THE DISTRICT OF COLUMBIA
## CRIMINAL DIVISION

*# 188-413*

*CDF Rf*

*C. Powell @ 10:30 AM*

UNITED STATES
DISTRICT OF COLUMBIA

*188 413*

vs.

JAMES WASHINGTON

*AKA*
*Epsi Lary*

Case No: 2007 CF2 008699

PDID: 304430

DCDC#:

### RELEASE ORDER

TO: Superintendent, D.C. Jail

It is HEREBY ORDERED that the defendant be released from custody in this case. THIS CASE ONLY.

Jewel Myers, DEPUTY CLERK

Date: November 1, 2007

JAMES E BOASBERG
JUDGE / MAGISTRATE JUDGE

# RELEASE

Received by US Marshal _____ Date Nov 1, 07

C4ro.doc



# SUPERIOR COURT OF THE DISTRICT OF COLUMBIA
## CRIMINAL DIVISION

*C. Powell @ 11²⁰pm*

UNITED STATES
DISTRICT OF COLUMBIA

CDF 199.
188413

vs.

JAMES WASHINGTON

Case No: 2007 CTF 003029

PDID: 304430

DCDC#:

### RELEASE ORDER

TO: Superintendent, D.C. Jail

It is HEREBY ORDERED that the defendant be released from custody in this case.

_____
Dwayne Jenkins, DEPUTY CLERK

_____
MICHAEL J MCCARTHY
JUDGE / MAGISTRATE JUDGE

Date: November 14, 2007

*(margin, handwritten, vertical)* Ticket's & Paraphenalia Syringe Diabetic

# **RELEASE**

Received by US Marshal _____ Date _____
NOV 14 2007 AM 11:29

Cdro.doc

# JAIL



## SUPERIOR COURT OF THE DISTRICT OF COLUMBIA
### CRIMINAL DIVISION

Case No.: **2007 CF2 008699**

PDID No : 304430
DCDC:
SSN: 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

JAMES WASHINGTON

Date of Birth: 10/13/1956

### COMMITMENT PENDING DISPOSITION
### DC JAIL

TO: SUPERINTENDENT, DISTRICT OF COLUMBIA JAIL:

Pursuant to D.C. Code **CB 23-1321c1BXIII (Cash Bond)** receive into your custody **JAMES WASHINGTON**, who is charged with:

## CARRYING A PISTOL WITHOUT A LICENSE

Comments:

Separate From:

**BOND SET: 100.00 CASH BOND**

Next scheduled court appearance:

Preliminary Hearing at 11:00 am on **Monday May 14, 2007** in Courtroom 201, 500 Indiana Avenue N.W., WASHINGTON, DC 20001

Defendant is committed into your custody until further order of the Court.

WITNESS the Honorable Chief Judge of the Superior Court of the District of Columbia, and the seal of said Court on this date April 18, 2007

Judge DIANE BRENNEMAN

Graciela Garaycochea
Deputy Clerk

# COMMITMENT



Received by US Marshal ___ Date _____

C:dcpd.doc

**SUPERIOR COURT FOR THE DISTRICT OF COLUMBIA**
CRIMINAL DIVISION

UNITED STATES
VS.

Washington, James AKA: Epps, Larry Darwell

On April 4, 2007, the D. C. Parole Commision received a warrant for the defendant's arrest; warrant number 071604111254C.

On April 13, 2007, at approximately 2130 hours, a witness observed the defendant at 113 Wilmington Place Southeast , Washington, D. C. with a handgun threatening to shoot himself. The witness called police who took a missing person report and attempted to locate the defendant. During the investigation of the missing person report, the witness handed them the box that the defendant had retrieved the weapon from and found a full box of .380 caliber ammunition. The ammunition was recovered and placed on the property book for evidence.

On April 14, 2007, while following up on the missing person report involving the defendant, officers found that the above warrant was outstanding for the defendant. As a result, they responded to the location in an attempt to locate the missing person and take him into custody. After receiving numerous busy signals to phone calls inside of the residence and not getting any response at the door to repeated knocks, officers feared for the safety of the witness and defendant. The property manager was contacted and provided police with the keys to the apartment. Upon entering the apartment, the defendant, Mr. James Washington aka; Larry Epps, was located and placed under arrest and transported to the 7th District where he was processed fruther. Mr. Washington was asked about the weapon and he claimed to have thrown it into the river. A D. C. Superior Court search warrant was obtained and the premises was checked with negative results. The witness advised officers that the defendant had an abandoned vehicle he had apparently slept in after police left. The witness provided polcie with the keys to the vehicle. A search of the vehicle revealed a Hi Point .380 caliber semi-automatic handgun bearing serial number P712267, black and grey, under the front driver's seat. Also on the front passenger seat were numerous pill bottles in the name of Mr. Larry Epps, Mr Washington's alias.

A field test of the weapon revealed that it is operable. The proceedure for this was by working the action on the weapon and taking the rubber end of a pencil in the barrel and pulling the trigger. The weapon was operable because the pencil popped out of the barrel meaning the firing pin would be able to strike the primer of a cartridge and cause it to discharge. The weapon was processed by crime scene search and no fingerprints were found on the weapon or ammunition.

The events and acts described above occurred primarily in the District of Columbia and were committed as described by defendant(s) listed in the case caption

Subscribed and sworn before me this _____ Day of April 16th _____ 2007

_____        S-127        7th        _____
Police Officer         Badge Number    District    Deputy Clerk

SUPERIO, COURT OF THE DISTRICT OF C( JMBIA

CRIMINAL DIVISION

**COMPLAINT**

DCTN: 070701613

Lockup No: ___ 106

Case No: ___

District of Columbia ss:

Defendant's Name:  **James Washington**                          **304430**          **07047464**

(First)          (MI)          (Last)                          (PDID)          (CCNO)

Address: **113 WILMINGTON PL SE, WASH DC**

On or about April 4, 2007, within the District of Columbia, James Washington did carry, openly and concealed on or about his person, in a place other than his dwelling place, place of business or on other land possessed by him, a pistol, without license/licenses issued pursuant to law. **(Carrying a Pistol Without a License [Outside Home or Place of Business], in violation of 22 D.C. Code, Section 4504(a) (2001 ed.))**

Co-Defendants:

_Affiant's Name_

Subscribed and sworn to before me this ___ 16 ___ day of ___ **April, 2007** ___

(Judge) (Deputy Clerk)

**WARRANT**

_To The United States Marshal or any other authorized federal officer or the Chief of Police of the District of Columbia:_
   WHEREAS the foregoing complaint and affidavit supporting the allegations thereof have been submitted, and there appearing probable cause and reasonable grounds for the issuance of an arrest warrant for ___
**YOU ARE THEREFORE COMMANDED TO BRING THE DEFENDANT BEFORE SAID COURT OR OTHER PERSON ENUMERATED IN 18 U.S.C. 3041 forthwith to answer said charge.**

Issued ___

Judge - Superior Court of the District of Columbia

Rule 105: ☐

Judge

| Sex: Male | DOB: 10/13/1956 | CCN: 07047464 | PDID: 304430 |
|---|---|---|---|
| Papering Officer: James Lafranchise | | | Badge No.:  S-127 |

**OFFICER MUST EXECUTE RETURN**

| Officer's Name: | Date / Time: | | |
|---|---|---|---|
| AUSA Signature:   P McB le | Fel. I ☐ | AFTC ☐ | Fel. II ☑ |

2007 CTF 003029          District of Columbia  vs.  WASHINGTON, JAMES

| Party | | | | |
|-------|---|---|---|---|
| Attributes | | | | |
| Full Name | WASHINGTON, JAMES | | Party<br>Type | Defendant (Criminal) |

| Charge | | | | |
|--------|---|---|---|---|
| Charge<br># | Phase | Charge Description | | Party Charge<br>Disposition |
| 2 | Court | Unregistered Vehicle | | ▆▆▆▆▆▆▆▆ |
| 3 | Court | Misuse of Temporary Tags | | ▆▆▆▆▆▆▆▆ |

Ex. A (3)

Ex A(4)

## LEFT COPY

**DISTRICT OF COLUMBIA NOTICE OF INFRACTION**

DAY OF WEEK: SUN  DATE: 4th  MONTH: Feb  YEAR: 07  TIME: 0923  ☑ AM ☐ PM

VIOLATOR'S FULL NAME (LAST, FIRST, MIDDLE): Epps, Larry Darnell  OWNER: ☐

STREET ADDRESS: 113 Wilmington Pl SE #303  SEX: M

CITY, STATE: WASH DC  ZIP:  DATE OF BIRTH: MO 50 DAY 93 YEAR 55

OPERATOR'S PERMIT NO: 146286  HZMT ☐ CDI ☐ STATE DC

VEHICLE LICENSE NO:  DC ☐ MD ☐ VA ☐ OTHER ☐ TAG YEAR

☑ BLOCK ☐ FRONT ☐ REAR ☐ SIDE  VEH MAKE: Ford  BODY: SUV  COMM VEH ☐

☐ EAST SIDE ☐ WEST SIDE ☐ NORTH SIDE ☐ SOUTH SIDE ☐ OPPOSITE

LOCATION OF VIOLATION: 2308/00 Alabama Ave SE

☐ ST. ☑ AVE. ☐ RD. ☐ PL. ☐ CT.
☐ N.W. ☐ N.E. ☐ S.W. ☑ S.E.

**MOVING VIOLATION**                    CODE
T1713 ☐ SEAT BELT REGULATION    ☐ SPEEDING ___ MPH
T113 ☐ SIGNAL PASS RED LT.    IN ___ MPH ZONE
T128 ☐ STOP SIGN, PASSING    T672 ☐ TAGS FAIL DISPLAY CURR.
T112 ☐ SIGNAL DEVICE DISOBEY    T183 ☐ NO LEFT TURN
T107 ☐ NO YIELD RIGHT OF WAY    T742 ☐ FAIL TO DISPLAY CURR INSPC.
OTHER: Fail to show proof of insure
☐ ACCIDENT ☐ INJURY    ☐ CCN:

**PARKING VIOLATION**                  CODE
39 ☐ RED METER (............)    03 ☐ RESIDENTIAL PARKING
35 ☐ NO PARKING ANYTIME    20 ☐ LESS 10' FIRE HYDRANT
02 ☐ ALLEY, IN    31 ☐ IN LOADING ZONE
07 ☐ IN BUS ZONE    159 ☐ NO STAND, RUSH HOURS, AM
☐ LESS ___ INTERSECTION    259 ☐ NO STAND, RUSH HOURS, PM
01 ☐ PARKING ABREAST    41 ☐ PRIVATE OR PUBLIC PROPERTY
☐ OTHER: ..................................

SCHEDULED FINE OR COLLATERAL
☐ $15 ☐ $20 ☐ $25 ☐ $50 ☐ $75 ☐ $100 ☑ $ 4.30

I swear or affirm under penalty of perjury that I observed or investigated the commission of this violation and served this notice of infraction as provided for by law.
ISSUER'S SIGNATURE:    DEPT: MPD  ELEMENT: 7A  BADGE NO: S-127
MPD CAD NO.: 3291

I hereby acknowledge receipt of this notice of infraction. ACKNOWLEDGEMENT OF RECEIPT IS NOT AN ADMISSION OF LIABILITY.

DATE:    SIGNATURE:  **COPY C**
BTA FORM 51 11/04

## RIGHT COPY

**DISTRICT OF COLUMBIA NOTICE OF INFRACTION**

DAY OF WEEK: SUN  DATE: 4th  MONTH: Feb  YEAR: 07  TIME: 0925  PM

VIOLATOR'S FULL NAME (LAST, FIRST, MIDDLE): Epps, Larry Darnell  OWNER: ☐

STREET ADDRESS: 113 Wilmington Pl SE  SEX: M

CITY, STATE: WASH DC  ZIP:  DATE OF BIRTH: 50 93 55

OPERATOR'S PERMIT NO: 146286  HZMT ☐ CDI ☐ STATE DC

VEHICLE LICENSE NO:  DC ☐ MD ☐ VA ☐ OTHER ☐ TAG YEAR

☑ BLOCK ☐ FRONT ☐ REAR ☐ SIDE  VEH MAKE: PKC  BODY: SUV  COMM VEH ☐

☐ EAST SIDE ☐ WEST SIDE ☐ NORTH SIDE ☐ SOUTH SIDE ☐ OPPOSITE

LOCATION OF VIOLATION: 2700 BLK Alabama Ave SE

☐ ST. ☑ AVE. ☐ RD. ☐ PL. ☐ CT.
☐ N.W. ☐ N.E. ☐ S.W. ☑ S.E.

**MOVING VIOLATION**                    CODE
T1713 ☐ SEAT BELT REGULATION    ☐ SPEEDING ___ MPH
T113 ☐ SIGNAL PASS RED LT.    IN ___ MPH ZONE
T128 ☐ STOP SIGN, PASSING    T672 ☐ TAGS FAIL DISPLAY CURR.
T112 ☐ SIGNAL DEVICE DISOBEY    T183 ☐ NO LEFT TURN
T107 ☐ NO YIELD RIGHT OF WAY    T742 ☐ FAX TO DISPLAY CURR INSPC.
OTHER: No Frost ins
☐ ACCIDENT ☐ INJURY    ☐ CCN:

**PARKING VIOLATION**                  CODE
39 ☐ RED METER (............)    03 ☐ RESIDENTIAL PARKING
35 ☐ NO PARKING ANYTIME    20 ☐ LESS 10' FIRE HYDRANT
02 ☐ ALLEY, IN    31 ☐ IN LOADING ZONE
07 ☐ IN BUS ZONE    159 ☐ NO STAND, RUSH HOURS, AM
☐ LESS ___ INTERSECTION    259 ☐ NO STAND, RUSH HOURS, PM
01 ☐ PARKING ABREAST    41 ☐ PRIVATE OR PUBLIC PROPERTY
☐ OTHER: ..................................

SCHEDULED FINE OR COLLATERAL
☐ $15 ☐ $20 ☐ $25 ☑ $50 ☐ $75 ☐ $100 ☐ $ .....

I swear or affirm under penalty of perjury that I observed or investigated the commission of this violation and served this notice of infraction as provided for by law.
ISSUER'S SIGNATURE:    DEPT: MPD  ELEMENT: 7A  BADGE NO: S-127
MPD CAD NO.: 3291

I hereby acknowledge receipt of this notice of infraction. ACKNOWLEDGEMENT OF RECEIPT IS NOT AN ADMISSION OF LIABILITY.

DATE:    SIGNATURE:  **COPY C**
BTA FORM 51 11/04

# D.C. PROBABLE CAUSE HEARING DIGEST

Name..............................: **Epps, Larry**

Reg. No...........................: **36966-118**

Type of Release .............:**Parole**

Full Term Date When Warrant Issued..: **Life**

Date Warrant Executed.: _9.8.06_

Hearing Date.........: _9.15.06_

Examiner...............: _McLea_

Supervision Officer: **Emesha James**

## Attorney at Probable Cause Hearing:

[ ✓ ] PDS        [   ] Other        [   ] None

Name _Meggins Skolnick_

Address _PDS (DC_

Phone _____

## Attorney Representing Subject at Revocation Hearing:

[ ✓ ] PDS        [   ] Other        [   ] Unknown

Name _Same As Above._

Address _____

_____

Phone _____

## I. Items Advised *(Check that the subject has been advised of the following two rights):*

[ ✓ ] Advised of Right to a Probable Cause Hearing     [ ✓ ] Advised of Right to Attorney

## II. Reason For Not Conducting Probable Cause Hearing

*{If Probable Cause Hearing not conducted, indicate the reason}:*

[   ] Postponed to Next Docket *{If so, provide reason for postponement and omit rest of form.}*

    [   ] At Request of Attorney/Prisoner        [   ] Prisoner Unavailable

    [   ] Other Reason:_____

[   ] Combined Probable Cause/Revocation Scheduled *{If so, skip to VI, Revocation Hearing.}*

**EXHIBIT**

**Epps, Larry**
**Reg. No. 36966-118    DCDC No. 188-413**

## III. Review of Charges:

Charge No. 1 - Failure to Submit to Drug Testing

[  ] ADMITS          [ X ] DENIES

The Subject's Response:

Some of the dates reflect the dates he was unable to provide Urine due to his prostate.

[ X ] Probable Cause Found.  After considering the violation report dated 8-15-2006, and the subject's response to the charge at this hearing, the evidence supporting the charge is sufficiently specific and credible for the existence of probable cause for Charge No. 1. Additional reasons for probable cause finding:

[  ] No Probable Cause Found

Charge No. 2 - Failure to Report to Supervising Officer as Directed

[  ] ADMITS          [ X ] DENIES

The Subject's Response:

[ X ] Probable Cause Found.  After considering the violation report dated 8-15-2006, and the subject's response to the charge at this hearing, the evidence supporting the charge is sufficiently specific and credible for the existence of probable cause for Charge No. 2. Additional reasons for probable cause finding:

Epps, Larry
Reg. No. 36966-118    DCDC No. 188-413

_____

_____

_____

_____

**[   ] No Probable Cause Found**
_____

**Charge No. 3-Use of Dangerous and Habit Forming Drugs.**

**[   ] ADMITS          [   ] DENIES**

The Subject's Response:
_____

_____

_____

**[ X ] Probable Cause Found.** After considering the violation report dated 8-15-2006, and the subject's response to the charge at this hearing, the evidence supporting the charge is sufficiently specific and credible for the existence of probable cause for Charge No. 3. Additional reasons for probable cause finding:
_____

_____

_____

**[   ] No Probable Cause Found**
_____

**IV.  Additional Charges:**
_____

_____

_____

**Epps,  Larry**
**Reg. No. 36966-118     DCDC No. 188-413**

## V. Outcome of Probable Cause Hearing:

[ X ] **Probable Cause Found** on one or more charges, **Hold in Custody** pending revocation hearing.

[ ] **No Probable Cause Found** for any charge. **Discharge from Custody immediately and**

   [ ] **Reinstate to Supervision** or [ ] **Close Case** *[If expiration date has passed]*

[ ] **Probable Cause Found** on one or more charges. Recommend **Reinstate to Supervision** and

   [ ] **Summon** to revocation hearing or [ ] **Terminate** revocation proceedings

Reason for Release/Summons:_____

_____

## VI. Principal Adverse Witnesses Identified by the Commission:

Note to Subject: This is the time to request the attendance of an adverse witness (including an adverse witness identified by the Commission or an examiner on this form). Your failure to make a request for the attendance of any adverse witness is a waiver of your opportunity to confront and cross-examine that witness at a revocation hearing.

Supervision Officer
Name: Enesha James
Status: ____ Approved     ____ Not Approved     ____ **Pending Further Review**

## VII. Adverse Witnesses Requested by Subject:

Name:_____

Address:_____

Phone No._____

Status: [ ] Denied at PC Hearing   [ ] Approved at PC Hearing   [ ] **Pending Further Review**

Reason for Denial:_____

_____

_____

Name:_____

Epps, Larry
Reg. No. 36966-118   DCDC No. 188-413

Address:_____

Phone No._____

Status: [   ] Denied at PC Hearing    [   ] Approved at PC Hearing    [   ] Pending Further Review

Reason for Denial:_____

_____

_____

Name:_____

Address:_____

Phone No._____

Status: [   ] Denied at PC Hearing    [   ] Approved at PC Hearing    [   ] Pending Further Review

Reason for Denial:_____

_____

_____

## VIII. Adverse Witnesses Identified by Examiner But Not Requested by Subject:

Name:_____

Address:_____

Phone No._____

Reason for Denial:_____

_____

_____

Name:_____

Address:_____

Phone No._____

Reason for Denial:_____

_____

_____

## IX. Revocation Hearing:

[ ✓ ] Local Revocation or        [ ] Combined Probable Cause/Local Revocation on:

Location: [ ✓ ] CTF  [ ] DC Jail   Date: __11|8|06__   Time: [ ] am  [ ✓ ] pm

[ ] Other at _____

_____

[ ] Recommend institutional revocation hearing upon transfer to a federal institution.

**Note:** A continuance must be requested in writing. You may submit your requests via e-mail. E-Mail Address: continue.hearing@usdoj.gov

_____
Attorney/Prisoner                                          Date
_____

Additional Text:

Subject has medical condition referring, Diabetis; + Swollen Prostate. (+) Have not rec'ved TX since his arrest. Per Subject arrested In his CSO office @ 2:30 pm on 9/7/06 — (USM - did not notify USPC via fax of Subject's arrest. Until 9/11/06. — Per Subj- he is a General Contractor — long duration of Confinement will affect his business/Family

_____ A McLa___   **9/15/06**
Examiner                                          Date

**Disclosure Documents:** Warrant dated 8-25-2006, Warrant Application dated 8-25-2006, Violation Report dated 8-15-2006, with attachments, Parole Certificate dated 9-29-2005, and Pre-Sentence Report.

I acknowledge having received the above disclosure documents and a copy of this document.

_____   **9-15-06**
Attorney/Prisoner                                          Date

_____

Epps, Larry
Reg. No. 36966-118    DCDC No. 188-413