UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|   |   |
|---|---|
| LARRY D. EPPS, | ) |
| Plaintiff, | ) |
| v. | ) Civil Action No. 07-1188 (RMC) |
| U.S. ATTORNEY GENERAL, *et al.*, | ) |
| Defendants. | ) |

MEMORANDUM OPINION

Larry D. Epps complains that a Community Supervision Officer ("CSO") erroneously reported that he had used drugs, when his positive drug test resulted from prescription medications, causing him to be incarcerated for sixty days to await a revocation hearing by the United States Parole Commission ("Parole Comission"), after which he was re-paroled. As a result, his newly-established home repair business collapsed. He seeks compensatory and punitive damages from the following Federal Defendants: United States Attorney General, the Parole Commission, the Court Services and Offender Supervision Agency ("CSOSA")[1], and CSOSA employees, CSOs Joseph Alston and Emesha James (the Attorney General and CSOs Alston and James will be referred to, collectively, as the "Individual Defendants").[2] The Court concludes that the Complaint against the Federal Defendants must be dismissed.

---

[1] Both the Parole Commission and CSOSA are federal agencies. Although CSOSA is not named as a defendant, the Court construes the Complaint to assert claims against CSOSA as well.

[2] Mr. Epps's Complaint also names the Government of the District of Columbia as a defendant. *See* Compl. [Dkt. # 1]. The District of Columbia is not a Federal Defendant, and did not join in the Federal Defendants' motion to dismiss that is presently considered.

## I. BACKGROUND

Mr. Epps was sentenced by the Superior Court of the District of Columbia on June 23, 1989, to a term of incarceration of 12 years to life for second degree murder.[3] Fed. Defs.' Mem. in Supp. of Mot. to Dismiss or in the Alternative for Summ. J. ("Defs.' Mem.") at 2 [Dkt. # 14]. He was released on parole by the Parole Commission on October 8, 2005, to remain on parole supervision for life. *Id.*

On August 16, 2006, Mr. Epps's CSO, Emesha James, prepared a report recommending that a warrant be issued for his arrest. *Id.* According to the report, Mr. Epps had failed to report to supervision, as required, on July 25 and 27, 2006; and on August 2, 3, 4 and 7, 2006. He had also failed to report for drug testing, as required, on April 3 and 6, 2006; May 8, 15 and 18, 2006; and June 5, 12 and 15, 2006. *Id.* According to Ms. James's report, when Mr. Epps resumed contact with her on August 1, 2006, he admitted that he had been using cocaine. *Id.* CSO James therefore put Mr. Epps on a daily reporting schedule as a sanction but he failed to show up until August 9, 2006. *Id.* at 3.

Based on Ms. James's report, the Parole Commission issued a warrant on August 25, 2006, and Mr. Epps was arrested in September 2006.[4] He was remanded to the custody of the USMS

---

[3] Some of the exhibits submitted by Mr. Epps suggest that James Washington is his true name. The Court will use Larry D. Epps in this Opinion as that is the name he used in the Complaint.

[4] The parties disagree on the date of Mr. Epps's arrest in September 2006. Mr. Epps states that he was arrested on September 7, 2006 when he was visiting his parole officer between 1:00 p.m. and 2:30 p.m. Pl.'s Motion for Summ. J. with Declaratory Relief or Jury Trial Pursuant to the Seventh Amend. ("Pl.'s Mot. for Summ. J.") at 3 [Dkt. # 29]. Mr. Epps reports that after spending the night in the Central Cell Block, he was taken to federal District Court and turned over to be processed by the United States Marshal Service ("USMS"). *Id.* He was then sent to D.C. Jail. *Id.* The Federal Defendants state that he was arrested on September 8, 2006. Defs.' Mem. at 3. For the purposes of this Opinion, the Court will assume that Mr. Epps was arrested on September 7, 2006.

and the Parole Commission was notified that Mr. Epps was in custody on September 11, 2006. *Id.* A hearing to determine whether there was probable cause to believe Mr. Epps had violated the terms of his probation was held before a hearing examiner on September 15, 2006. *Id.* Counsel from the Public Defender Service appeared to represent Mr. Epps. *Id.* Mr. Epps explained to the hearing examiner that all of the drug test violations were medically related and that any lengthy stint of incarceration would cause him to lose his newly established home improvement business. Pl.'s Mot. for Summ. J. at 3-4.[5] According to Mr. Epps, the Public Defender "made no effort to defend [him] before the [hearing] [e]xaminer and in fact remain[ed] mute during the whole procession of the show cause hearing." Compl. at 6. The hearing examiner found that probable cause existed for the arrest and scheduled a parole revocation hearing for November 8, 2006. Defs.' Mem. at 5. Mr. Epps was incarcerated in the meantime. Compl. at 5-6. At the November 8 parole revocation hearing, CSO James failed to appear, and Mr. Epps was released on a finding of insufficient evidence to support parole revocation. Defs.' Mem. at 5. He was instructed to report immediately to his parole officer. *Id.*[6]

Mr. Epps filed this Complaint on June 29, 2007. *See* Compl. He alleges that CSO James caused the warrant for his arrest to be issued in violation of the Fourth Amendment to the U.S.

---

[5] *See* Defs.' Mem., Ex. B *D.C. Probable Cause Hearing Digest* at 6 ("Subject has medical condition for [redacted], Diabetes, & Swollen Prostate. Have not rec'ved TX since his arrest. Per Subject arrested In [sic] his CSO office @ 2:30 pm on 9/7/06 –USM did not notify USPC via fax of Subject's arrest until 9/11/06. Per Sub. he is a General Contractor – long duration of confinement will affect his business/family.").

[6] On February 2, 2007, Mr. Epps was rearrested for possession of drug paraphernalia with intent to use; misuse of automobile registration tags and operating an unregistered automobile. At the time of his lockup pursuant to this arrest, Mr. Epps tested positive for cocaine and opiates. Defs.' Mem. at 3 n.2, Ex. C Alleged Violations Report.

Constitution by "misrepresenting critical facts" to the Parole Commission; that the Parole Commission's failure to provide him a probable cause hearing within five days of his arrest violated his Fifth and Fourteenth Amendment rights under the U.S. Constitution; that the inability of appointed counsel to represent him adequately at his probable cause and final revocation hearings and the failure of CSO James to appear at his revocation hearings violated his Sixth Amendment rights to effective assistance of counsel and to be confronted with the witnesses against him; and that the United States' failure to assess properly its officials' propensity for truth, honesty and integrity caused a violation of Mr. Epps's Eighth Amendment right to be free from cruel and unusual punishment because such failure permitted the hiring of CSO James who allegedly "intentionally and [] malic[iously]"misrepresented critical facts in her parole violation report. *See id. generally*. He seeks compensatory and punitive damages. *Id.* at 14. The Federal Defendants move, pursuant to Federal Rules of Civil Procedure 12(b)(1), (b)(5) and (b)(6), for dismissal of this action for lack of subject matter jurisdiction, failure to state a claim upon which relief may be granted, and failure to serve the Individual Defendants properly; or, in the alternative, for summary judgment under Federal Rule of Civil Procedure 56. Mr. Epps opposes and filed a cross motion for summary judgment.[7]

---

[7] Mr. Epps filed a "Plaintiff's Motion for Summary Judgment and Opposition to Defendant's Motion to Dismiss the Complaint or in the Alternative for Summary Judgment" on January 15, 2008 [Dkt. # 19], a "Plaintiff's Affidavit in Rebuttal to Summary Judgment and Opposition to Defendant's Motion to Dismiss or in the Alternative for Summary Judgment" on January 31, 2008 [Dkt. # 22], and a "Plaintiff/Affiant's Sworn Affidavit in Memorandum of Points & Authorities in Response to Defendant's Motion for Summary Judgment" on February 1, 2008 [Dkt. # 23]. The documents listed as Docket ## 19 & 22 are the same. The document listed as Docket # 23 is notarized and substitutes the term"Affiant" for "Plaintiff," but is otherwise the same as the Docket ## 19 & 22. Mr. Epps also filed a "Motion for Summary Judgment with Declaratory Relief or Jury Trial Pursuant to the Seventh Amendment" [Dkt. # 29] which is different from the other motions, but similarly requests judgment against the Federal Defendants in this case.

## II.  LEGAL STANDARDS

Federal courts are courts of limited jurisdiction and the law presumes that "a cause lies outside this limited jurisdiction." *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994); *St. Paul Mercury Indem. Co. v. Red Cab Co.*, 303 U.S. 283, 288-89 (1938).  Because "subject-matter jurisdiction is an 'Art. III as well as a statutory requirement[,] no action of the parties can confer subject-matter jurisdiction upon a federal court.'" *Akinseye v. District of Columbia*, 339 F.3d 970, 971 (D.C. Cir. 2003) (quoting *Ins. Corp. of Ir., Ltd. v. Compagnie des Bauxite de Guinea*, 456 U.S. 694, 702 (1982)).  On a motion to dismiss for lack of subject-matter jurisdiction pursuant to Rule 12(b)(1), the plaintiff bears the burden of establishing that the court has subject-matter jurisdiction.  *Evans v. B.F. Perkins Co.*, 166 F.3d 642, 647 (4th Cir. 1999); *Rasul v. Bush*, 215 F. Supp. 2d 55, 61 (D.D.C. 2002) (Kotelly, J.) (citing *McNutt v. Gen. Motors Acceptance Corp.*, 298 U.S. 178, 182-83 (1936)).  To determine whether it has jurisdiction over the claim, a court may consider materials outside the pleadings.  *Herbert v. Nat'l Acad. of Scis.*, 974 F.2d 192, 197 (D.C. Cir. 1992).

A motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) challenges the adequacy of a complaint on its face, testing whether a plaintiff has properly stated a claim.  A sufficient complaint "contains a short and plain statement of the claim showing that the pleader is entitled to relief" enough "to give a defendant fair notice of the claims against him."  *Ciralsky v. CIA*, 355 F.3d 661, 668-70 (D.C. Cir. 2004) (quoting Fed. R. Civ. P. 8(a)).  Although a complaint does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief  "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."  *Bell Atl. Corp. v. Twombly*, 127 S. Ct. 1955, 1964-65

(2007) (internal citations omitted).

The court must treat the complaint's factual allegations — including mixed questions of law and fact — as true, drawing all reasonable inferences in the plaintiff's favor. *Macharia v. United States*, 334 F.3d 61, 64, 67 (D.C. Cir. 2003); *Holy Land Found. for Relief & Dev. v. Ashcroft*, 333 F.3d 156, 165 (D.C. Cir. 2003); *see also Aktieselskabet Af 21. Nov. 2001 v. Fame Jeans, Inc.*, No. 07-7105, 2008 U.S. App. LEXIS 9627, at *14 (D.C. Cir. Apr. 29, 2008) (under Rule 12(b)(6), "a court must construe a complaint liberally in the plaintiff's favor, accepting all of the allegations in the complaint as true, even if doubtful in fact") (citing *Twombly*, 127 S. Ct. at 1965). Even so, the facts alleged "must be enough to raise a right to relief above the speculative level," *Twombly*, 127 S. Ct. at 1965, and the court need not accept as true inferences unsupported by facts set out in the complaint or legal conclusions cast as factual allegations. *Aktieselskabet*, 2008 U.S. App. LEXIS 9627, at *19 n.4; *Browning v. Clinton*, 292 F.3d 235, 242 (D.C. Cir. 2002). "A complaint needs *some* information about the circumstances giving rise to the claims." *Aktieselskabet*, 2008 U.S. App. LEXIS 9627, at *19 n.4.

In deciding a 12(b)(6) motion, the Court may consider only "the facts alleged in the complaint, documents attached as exhibits or incorporated by reference in the complaint, and matters about which the Court may take judicial notice." *Gustave-Schmidt v. Chao*, 226 F. Supp. 2d 191, 196 (D.D.C. 2002) (citation omitted). However, the Court may, in its discretion, consider matters outside the pleadings and thereby convert a Rule 12(b)(6) motion into a motion for summary judgment under Rule 56. *See* Fed. R. Civ. P. 12(b); *Yates v. District of Columbia*, 324 F.3d 724, 725 (D.C. Cir. 2003).

### III.  DISCUSSION

Mr. Epps is angry because CSO James recommended a warrant for his arrest based on alleged use of cocaine, which he believes resulted from false positive test results due to prescription medication for his serious health problems.  The CSO's recommendation was adopted by the Parole Commission, Mr. Epps was arrested on September 7, 2006, he had to wait until September 15, 2006 for a probable cause hearing on whether he had violated the terms of his probation, and then had to wait until November 8, 2006 for a revocation hearing.  In the meantime, his home repair business collapsed.  He asserts that his Fourth, Fifth, Sixth, Eighth, and Fourteenth Amendment rights were violated during the parole revocation process, and he seeks monetary damages for the loss of his business and the deprivation of his liberty.

**A.  Sovereign Immunity**

The Federal Government can only be sued insofar as it has agreed to be sued. *F.D.I.C. v. Meyer*, 510 U.S. 471, 475 (1994).  "Absent a waiver, sovereign immunity shields the Federal Government and its agencies from suit." *Id.*; *see also United States v. Nordic Village*, 503 U.S. 30 (1992).  Sovereign immunity also bars suit for money damages against federal officials in their official capacities absent a specific waiver by the Federal Government. *Clark v. Library of Congress*, 750 F.2d 89, 102-04 (D.C. Cir. 1984).  Thus, unless the Federal Government waived its sovereign immunity, Mr. Epps's claims for alleged constitutional violations by the Federal Defendants must be dismissed. *Id.* at 474-75; *Meyer v. Reno*, 911 F. Supp. 11, 18 (D.D.C. 1996).

When a plaintiff seeks monetary damages against a federal agency for certain torts committed by federal employees, the only possible basis for court jurisdiction would be the Federal Tort Claims Act ("FTCA"), 28 U.S.C. § 1346(b).  This statute provides no authority for Mr. Epps's

claims here, however, for two separate reasons. First, he does not assert that he has exhausted necessary administrative remedies under the FTCA, which is a mandatory prerequisite to bringing such a claim in court. *See GAF Corp. v. United States*, 818 F.2d 901, 904-05 (D.C. Cir. 1987). Second, the FTCA does not waive sovereign immunity for constitutional torts, as alleged by Mr. Epps, even if he had completed the administrative process. *See F.D.I.C. v. Meyer*, 510 U.S. at 477-78; *Clark v. Library of Congress*, 750 F.2d at 102-104.[8]

Because the Federal Government, its agencies and its employees acting in their official capacity have sovereign immunity, Mr. Epps's claims against the Federal Defendants, including the Individual Defendants in their official capacities, must be dismissed for lack of subject matter jurisdiction.

### B. *Bivens* Claims Against the Attorney General and CSO Alston

Although the Individual Defendants are protected from suit in their respective official capacities by sovereign immunity, the Supreme Court has recognized a narrow circumstance in which a citizen can sue an individual federal employee, in his personal capacity, for constitutional torts. *Bivens v. Six Unknown Named Agents of the Fed. Bur. of Narc.*, 403 U.S. 388 (1971). Although Mr. Epps has not specifically pled a *Bivens* claim against any of the Individual Defendants, because Mr. Epps is proceeding *pro se*, this Court will construe Mr. Epp's Complaint liberally to

---

[8] Mr. Epps does not have a claim against the Federal Defendants under 42 U.S.C. § 1983 either. Section 1983 permits suit against any "*person* who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects . . . any citizen of the United States . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws. . . ." 42 U.S.C. § 1983 (emphasis added). The Parole Commission is not a "person" for purposes of Section 1983 and, therefore, cannot be sued thereunder. *See, e.g., Al Fayad v. CIA*, 229 F.3d 272, 273 (D.C. Cir. 2000).

include *Bivens* claims against the Individual Defendants.[9]

A superior official cannot be held liable under Section 1983 or *Bivens* for the constitutional torts of employees under him or her; the common law theory of *respondeat superior* does not pertain to the federal government in this context. *See Marshall v. Reno*, 915 F. Supp. 426, 429-30 (D.D.C. 1996); *see also Cameron v. Thornburg*, 983 F.2d 253, 258 (D.C. Cir. 1993) (no *Bivens* claim against Attorney General and Bureau of Prisons Director where plaintiff's allegations failed to specify their personal involvement). The Complaint contains no allegations that the Attorney General or CSO Alston personally participated in the events that gave rise to Mr. Epps's claims. Nor are there any allegations that might support the inference that either the Attorney General or CSO Alston had notice of or acquiesced in such events.

Mr. Epps's arguments that the Attorney General, "as Master, owes [a] duty to use care, to provide that failure of servant to use care does not occur in course of his/her employment," Pl.'s Mot. for Summ. J. and Opp'n to Defs.' Mem. ("Pl.'s Opp'n") at 7 [Dkt. # 19], does not stand up in the face of these legal precedents. The master/servant relationship, on which *respondeat superior* is based, plays no role in a suit under *Bivens*. Therefore, dismissal of claims against the Attorney General and CSO Alston is necessary.

### C. *Bivens* Claims Against CSO James

CSO James is the only Federal Defendant who Mr. Epps alleges was personally

---

[9] In addition to the propriety of construing a *pro se* plaintiff's Complaint "liberally both to afford all reasonable inferences of fact and, in certain circumstances, to rewrite the complaint to name new defendants," *Settles v. U.S. Parole Comm'n*, 429 F.3d 1098, 1106 (D.C. Cir. 2005), judicial economy favors construing Mr. Epps's Complaint to include *Bivens* actions against the Individual Defendants because permitting him to amend his Complaint to allege specific *Bivens* claims would be futile in this case.

involved in allegedly violating his constitutional rights. Mr. Epps contends that: (1) he was deprived of his liberty in violation of the Fourth Amendment because CSO James misrepresented critical facts in her report that led to the issuance of a parole violator arrest warrant for Mr. Epps; and (2) his Fifth Amendment rights were violated when he was not given a probable cause hearing within five days of his arrest in accordance with 28 C.F.R. § 2.101(a) because CSO James, who knew that Mr. Epps was arrested on September 7, 2006, "[chose] not to convey the information to the [Parole] Commission until some days later." Compl. at 5, 8-9.

CSO James is protected by qualified immunity.[10] Qualified immunity shields government officials from suit relating to performance of their discretionary functions unless an official's conduct violated a clearly established constitutional or statutory right of which a reasonable person would have known. *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). The privilege is "an immunity from suit rather than a mere defense to liability; and like an absolute immunity, it is effectively lost if a case is erroneously permitted to go to trial." *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985). In determining whether a government official is entitled to qualified immunity from personal liability, federal courts apply a two-step test. *Saucier v. Katz*, 533 U.S. 194, 201 (2001). The initial inquiry is whether, "[t]aken in the light most favorable to the party asserting the injury[,] . . . the facts alleged show the officer's conduct violated a constitutional right." *Id.* If no constitutional rights would have been violated even if all of the factual allegations were established, then the inquiry is complete, and the officer is entitled to immunity from suit. *Id.* "On the other hand, if a violation could be made out on a favorable view of the part[y's] submissions, the next, sequential step is to ask whether the right was clearly established." *Id.*

---

[10] The same analysis would apply to the other Individual Defendants were the claims against them not otherwise without merit.

In the present case, Mr. Epps is not able to satisfy the first prong of the test because he has not alleged facts that could support his claims that his constitutional rights were violated.

1. *Fourth Amendment Claim*

Mr. Epps claims that the warrant for his arrest was issued because CSO James misrepresented critical facts to the Parole Commission. Compl. at 7. He argues that his seizure pursuant to this warrant violated his Fourth Amendment rights. *Id.* The Fourth Amendment protects "the right of the people to be secure in their persons . . . against unreasonable searches and seizures," and assures that "no Warrants shall issue, but upon probable cause. . . ." U.S. Const. amend. IV.

CSO James recommended that a warrant be issued for Mr. Epps in a report dated August 15, 2006. *See* Defs.' Mem. at 2, Ex. A Alleged Violation(s) Report. She reported that Mr. Epps had failed to report to supervision, as required, on July 25 and 27, 2006; and August 2, 3, 4 and 7, 2006. *Id.*, Ex. A Alleged Violation(s) Report. The report also stated that Mr. Epps had failed to report for drug testing, as required, on April 3 and 6, 2006; May 8, 15 and 18, 2006; and June 5, 12 and 15, 2006. *Id.*, Ex. A Alleged Violation(s) Report. According to Ms. James's report, when Mr. Epps had resumed contact with her on August 1, 2006, he had admitted that he had been using cocaine in the interim. *Id.*, Ex. A Alleged Violation(s) Report. CSO James therefore had put Mr. Epps on a daily report schedule as a sanction but he failed to show up again until August 9, 2006. *Id.* at 3, Ex. A Alleged Violation(s) Report.

Mr. Epps complains that CSO James erred in reporting that he had failed to show up for drug testing on September 11 and September 18, 2006, because he was incarcerated from September 7, 2006 until November 20, 2006, and could not have shown up. Pl.'s Opp'n at 6. He also insists that he informed CSO James of the medications he was taking and he reported those

medications to the Smart Drug Test Agency.[11]  *Id.*  He argues that "Federal Officials who are non-medical staffers, have indirectly sought measures through the issuance of warrants for [his] arrest, to regulate the medical treatment [he] receives."  *Id.*

The fundamental problem with Mr. Epps's argument is its timeline.  The documents he submits relate to events in 2007, when he was again arrested for allegedly violating the terms of his parole,[12] not the arrest warrant issued on August 25, 2006.  Mr. Epps advances no challenge to the facts contained in CSO James's August 16, 2006 report and recommendation, *i.e.*, his repeated failures to check in and to submit to drug testing, as well as his admission that he had been using cocaine in the spring and summer of 2006.  Thus, because Mr. Epps presents no factual allegations establishing that his parole violator arrest warrant was issued without probable cause, his Fourth Amendment claim cannot withstand the Federal Defendants' Motion to Dismiss.

2.  *Fifth Amendment Claim*

Mr. Epps alleges that his Fifth Amendment due process rights were violated because CSO James failed to timely report Mr. Epps's arrest to the Parole Commission, and, consequently, the probable cause hearing examiner did not conduct a probable cause hearing within five (5) days

---

[11]  In support of these statements, Mr. Epps presents an e-mail dated March 5, 2007, in which a medical provider wrote to CSO James to say that Mr. Epps needed to explore other pain medication management.  *See* Pl.'s Opp'n at 6, Ex. A-5.  He also submitted a Smart Drug Agency Status Report dated February 6, 2007.  *See id.*, Ex. A.

[12]  The 2007 charges alleged: (1) that Mr. Epps failed to submit to drug testing on September 11 and 18, 2006, and January 5, February 9, and March 16, 2007; (2) that Mr. Epps used dangerous and habit forming drugs, evidenced by positive urine specimens indicating cocaine use on February 5 and 16, 2007, and March 2 and 9, 2007; and (3) that Mr. Epps violated the law by mis-using car tags, driving an unregistered vehicle, and having drug paraphernalia in his possession.  Pl.'s Opp'n at 7-8.  According to Mr. Epps, the warrant in 2007 was issued on April 4, 2007, but all charges were *nolle prosequi*.  The paperwork submitted by Mr. Epps indicates that he was also charged with carrying a pistol without a license in May 2007.  *See id.*, Ex. (Unnumbered) [Dkt. # 19-3 at 17].  The disposition of this charge is unclear.

of his arrest as required by 29 C.F.R. § 2.101(a). Mr. Epps argues that he should have had a probable cause hearing within five days of his arrest, that he was arrested on September 7, that neither the USMS nor CSO James advised the Parole Commission of his arrest until September 11, and that his probable cause hearing was not held until September 15, eight days after his arrest. Compl. at 4, 9. This set of facts, while unfortunate, does not rise to the level of a constitutional violation under the Fifth Amendment. A delay in holding a probable cause and/or revocation hearing is actionable only if the plaintiff shows the delay was "both unreasonable and prejudicial." *Sutherland v. McCall*, 709 F.2d 730, 732 (D.C. Cir. 1983); *see also Maslauskas v. U.S. Bd. of Parole*, 639 F.2d 935, 938 (3d Cir. 1980).

The revocation of parole is not a criminal prosecution and, thus, the due process rights of an offender differ from those of a criminal defendant. *See Morrissey v. Brewer*, 408 U.S. at 481 ("[T]he full panoply of rights due a defendant" in a criminal prosecution does not apply to parole revocations because "[r]evocation deprives an individual, not of the absolute liberty to which every citizen is entitled, but only of the conditional liberty properly dependent on observance of special parole restrictions."). Certainly, Mr. Epps had a liberty interest in maintaining his conditional freedom and was entitled under the Due Process Clause to a hearing prior to revocation of his parole. *See Ellis v. District of Columbia*, 84 F.3d 1413, 1420 (D.C. Cir. 1996). His entitlement, however, was limited to notice and an opportunity to be heard in a reasonably timely manner. *Id.* at 1421-24. Depending on circumstances, much longer delays than that suffered by Mr. Epps have been found fully constitutional, as a delay violates a parolee's due process rights only if the parolee shows that the delay caused prejudice to his defense. *See Sutherland*, 709 F.2d at 732-33 (concluding that a 33-month delay in holding a parole revocation hearing did not violate the parolee's due process rights

where the parolee offered no proof that the delay prejudiced his defense but did assert that the delay caused him anxiety and negatively affected his eligibility for rehabilitative programs while in prison on other offenses); *Briscoe-El v. Gaines*, 2006 U.S. Dist. LEXIS 41474, at *5-6 (D.D.C. June 20, 2006) (concluding that a 7-day delay for a probable cause hearing and a 148-day delay for the revocation hearing did not raise a constitutional violation where parolee did not show prejudice to his defense).

Mr. Epps's Fifth Amendment claim fails to demonstrate any prejudice to his defense caused by the delay of either his probable cause hearing or his final revocation hearing. It will be dismissed for failure to state a claim on which relief can be granted.[13] [14]

---

[13] To the extent that Mr. Epps's Fifth Amendment claim could be construed as a *Bivens* claim against the probable cause hearing examiner or Parole Commissioner Bob Hayworth, courts have held that quasi-judicial absolute immunity applies to members of a parole board and to parole officers. *See Pate v. United States*, 277 F. Supp. 2d 1, 10-11 (D.D.C. 2004) (holding that the members of the D.C. Parole Board were entitled to absolute immunity against the claim that they violated the parolee's constitutional rights when they failed to provide him with a timely parole revocation hearing). Similarly, the probable cause hearing examiner, Parole Commissioner Hayworth, and CSO James each are entitled to quasi-judicial absolute immunity from Mr. Epps's Sixth Amendment claims and his Eighth Amendment claim. *See Fletcher v. District of Columbia*, 481 F. Supp. 2d 155, 165 (D.D.C. 2007); *Merki v. Baer*, No. 89-0101, 1990 U.S. Dist. LEXIS 9380, at *5 (D.D.C. July 24, 1990) (noting that "every circuit that has considered the question has granted absolute immunity for actions taken by parole boards in processing parole applications and deciding whether to grant or deny parole"); *see also Farrish v. Miss. State Parole Bd.*, 836 F.2d 969, 974-75 (5th Cir. 1988) (holding that where the preliminary hearing officer and the probation officer failed to make an adverse witness available at a parolee's preliminary revocation hearing, the preliminary hearing officer was entitled to quasi-judicial absolute immunity because he was acting in a judicial capacity just as the parole board was at the final revocation hearing, and the parole officer was entitled to absolute immunity because he was serving in a prosecutorial role during the preliminary revocation and final revocation hearings); *Namey v. Reilly*, 926 F. Supp. 5, 8-10 (D. Mass. 1996) (holding that the probation officer was absolutely immune from liability where the probationer claimed that the Parole Commission based its decision to revoke his parole solely on the information that was provided in the probation officer's report).

[14] Mr. Epps's *Bivens* claims against the Individual Defendants also must be dismissed under Federal Rule of Civil Procedure 12(b)(5) because he has not filed proof that he has properly

## IV.  CONCLUSION

For the reasons stated above, the Federal Defendants' Motion to Dismiss or in the Alternative for Summary Judgment [Dkt. ## 14 & 15] will be granted, and the Complaint will be dismissed. Furthermore, Mr. Epps's motions for summary judgment against the Federal Defendants will be denied.[15]  A memorializing order accompanies this Memorandum Opinion.


Date: September 8, 2008                                       /s/
                                                ROSEMARY M. COLLYER
                                                United States District Judge

---

served them.  If a plaintiff wants to pursue an action against a federal employee in his or her individual capacity, that individual must be served with process in accordance with Rule 4(e) of the Federal Rules of Civil Procedure.  *Simpkins v. District of Columbia*, 108 F.3d 366, 369 (D.C. Cir. 1997).  Rule 4(e) provides that service is effectuated by (a) complying with the laws of the state in which the district court is located or (b) delivering a copy of the summons and complaint to the defendant (or his appointed agent) personally, or by leaving copies thereof at the defendant's dwelling house or usual place of abode with some person of suitable age and discretion who resides there.  Fed. R. Civ. P. 4(e).  The D.C. Superior Court Rules of Civil Procedure allow for service upon individuals by first class, certified or registered mail.  D.C. SCR-Civil 4(i)(2)(B).  Actual notice does not substitute for technically proper service under Rule 4 and the Court is without jurisdiction to render a personal judgment against an individually-sued defendant until s/he has been properly served in accordance with the applicable federal or state statutory requirements.  *Ecclesiastical Order of the Ism of Am, Inc. v. Chasin*, 845 F.2d 113, 116 (6th Cir. 1988)*; Sieg v. Karnes*, 693 F.2d 803, 807 (8th Cir.  1982).

[15]  Because this Opinion resolves Mr. Epps's claims against the Federal Defendants, Mr. Epps's Motion for Supplemental Law Library Time at the D.C. Jail [Dkt. # 17] for the purposes of responding to the Federal Defendants' motion to dismiss will be denied as moot.